THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.*
THE HUDSON RIVER CONNECTING RAILROAD CORPO-
RATION, Respondent.

Constitutional law — interstate commerce — authority of
Federal government over navigable waters — authority of state
to authorize bridge over navigable stream subject to approval of
Congress — act of Congress authorizing but limiting time for
construction of bridge over Hudson river — waiver of penalty
incurred by failure to construct within time limit — property
rights cannot be forfeited by mere legislative enactment —
illegal attempt to repeal franchise — state may not impose
penalty of injunction and forfeiture for exercise by corporation
of Federal franchise.

1. Section 8 of article 1 of the Federal Constitution provides that
Congress shall have power to regulate commerce among the several
states. When Congress exercises its authority and acts within this
power, all other authority which conflicts or interferes with the
Federal power must fall, for the sovereignty of Congress is plenary.
The authority of the United States over navigable waters is that of a
supreme sovereign in so far as the authority is necessary under this
interstate commerce provision.

2. Under the acts of Congress of March 3, 1899, and March 23, 1906,
providing for the erection and approval of plans for bridges across
navigable waters, the authority of a state to authorize the erection of
a bridge at points where both banks of a navigable stream are parts
of the same state remains subject to the approval of Congress as
expressed through its administrative officers.

3. By an act approved by the president on March 13, 1914, authority
was granted to the defendant " to construct, maintain and operate a
bridge, together with the necessary approaches thereto, across the
Hudson river at a point suitable to the interests of navigation between
Castleton and Schodack Landing, in accordance with the provisions
of the act " of March 23, 1906. Congress has thus, under its authority
over commerce, declared the bridge to be erected over a navigable
stream to be a lawful bridge. By a later act, the time to commence
and complete the bridge was extended, and whatever penalty or for-
feiture may have been incurred by the defendant by failure to comply
with the provisions of the original statute was waived by the only
authority entitled to enforce such forfeiture.

4. A statute of this state granted permission to defendant to construct a bridge with more than one span at the proposed location (L. 1913, ch. 388). Later (L. 1917, ch. 713) the legislature passed an act by its terms repealing that statute and authorized a bridge to be built with one span. This statute does not affect the rights of defendant. The condition contained in that chapter that the construction of the bridge be .commenced before May 1, 1914, and completed within five years may well be treated as a condition subsequent and a failure to comply therewith. would not *ipso facto* forfeit the charter. Property rights cannot be forfeited by mere legislative enactment, and, therefore, the attempt by the state to repeal the franchise by chapter 713 of the Laws of 1917 is illegal and that statute must fall. Moreover, Congress having authorized defendant to erect a bridge and declared the bridge proposed to be erected lawful, no authority remained in the state to make any new or other regulations or requirements.

5. Nor can the legislature of New York state interfere with the plenary power of Congress to authorize this bridge for interstate commerce by depriving the corporation, authorized and vested with a grant of franchise from Congress, of the power *intra vires* to avail itself of the franchise by subsequently imposing the penalty of injunction and forfeiture of its charter for exercise of the franchise. (L. 1918, ch. 166.) (*People* v. *International Bridge Company*, 223 N. Y. 137, distinguished.)

*People* v. *Hudson River Connecting R. R. Corp.*, 186 App. Div. 602, affirmed.

(Argued December 9, 1919; decided March 2, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered March 7, 1919, affirming a judgment in favor of defendant entered upon an order of Special Term overruling a demurrer to separate defenses set up in the answer and directing a dismissal of the complaint.

The nature of the action and the facts, so far .as material, are stated in the opinion.

*Charles D. Newton, Attorney-General* (*William E. Woollard* and *C. T. Dawes* of counsel), for appellant. As a proposition of state law alone (disregarding for the moment all Federal legislation) the legislature under its reserved power over corporations had absolute authority to enact chapter 713 of the Laws of 1917 and chapter 166

of the Laws of 1918 amending the original charter of the railroad. (Const. of N. Y. art. 8, § 1; General Corporation Law, § 320; *N. Y. C. & H. R. R. R. Co.* v. *Williams,* 199 N. Y. 119; *People* v. *Beakes Dairy Co.,* 222 N. Y. 416.) Chapter 713 of the Laws of 1917 does not impair the obligation of any contract nor does it confiscate property, but it is a valid exercise of the state's power to regulate the exercise of defendant's franchise as a railroad or to regulate defendant itself as a corporation of its creation. (*Matter of N. Y. El. Lines,* 201 N. Y. 321; 235 U. S. 179.) The acts of 1917 and 1918 take away no rights from the defendant, nor do they confiscate any of its property. They simply add an additional burden to the permission granted by the prior act of 1913. This was within the absolute power of the legislature. (*People ex rel. Kimball* v. *B. & A. R. R. Co.,* 70 N. Y. 569; *Mayor, etc.,* v. *Twenty-third St. Ry. Co.,* 113 N. Y. 311; *Lord* v. *Equitable Life Assur. Society,* 194 N. Y. 220; *Lehigh Valley R. R. Co.* v. *Canal Board,* 146 App. Div. 151; *C., B. & Q. R. R. Co.* v. *Drainage Comrs.,* 200 U. S. 561; *West Chicago St. Ry. Co.* v. *Illinois,* 201 U. S. 506; *N. Y. C. & H. R. R. R. Co.* v. *Williams,* 199 N. Y. 108; *N. Y. & N. E. R. R. Co.* v. *Bristol,* 151 U. S. 556; *Greenleaf Lumber Co.* v. *Garrison,* 237 U. S. 251; *G. & W. Ry. Co.* v. *N. Y. C. & H. R. R. R. Co.,* 112 App. Div. 581.) Assuming all that the defendant railroad contends, namely, that it received primary creative authority to build the bridge from Congress and not from the state, the power from Congress was simply to build a bridge, and the type thereof was open to state legislative control in the interests of the public. (*L. S. & M. S. Ry. Co.* v. *Ohio,* 165 U. S. 365.) The defendant railroad did not receive primary creative authority to build the bridge from Congress, but from the state. The consent, or secondary authority, from Congress in the protection of navigation interests, is not such a congressional act as assumes the entire field of jurisdiction with respect to this bridge to the

exclusion of the state. (*Wilson* v. *Black Bird Creek Marsh Co.*, 2 Pet. 250; *State of Pennsylvania* v. *Wheeling Bridge Co.*, 18 How. [U. S.] 421; 9 How. [U. S.] 647; 13 How. [U. S.] 518; *Passaic Bridges Case*, [U. S. Dist. of N. J.] 3 Wall. App. 782; 3 Wall. 720; *County of Mobile* v. *Kimball*, 102 U. S. 691; *Bridge Company* v. *United States*, 105 U. S. 470; *Miller* v. *Mayor of New York*, 109 U. S. 395; *Sands* v. *Manistee River Improvement Co.*, 123 U. S. 288; *Willamette Iron Bridge Co.* v. *Hatch*, 125 U. S. 1; *Escanaba Co.* v. *Chicago*, 107 U. S. 679; *Cardwell* v. *Am. Bridge Co.*, 113 U. S. 205.) The state of New York has title to and governmental control of the land under the waters of the Hudson river and such lands cannot be taken from it without its consent unless by condemnation and payment therefor. (*Martin* v. *Waddell*, 16 Pet. 367, 410; *Pollard's Lessee* v. *Hagan*, 3 How. [U. S.] 230; *Morris* v. *United States*, 174 U. S. 196, 227; *People* v. *International Bridge Co.*, 223 N. Y. 137, 145; *United States* v. *Chandler-Dunbar Water Co.*, 229 U. S. 53; *Lewis Blue Point Oyster Co.* v. *Briggs*, 198 N. Y. 287; 229 U. S. 682; *Scranton* v. *Wheeler*, 179 U. S. 141, 163; *Gibson* v. *United States*, 166 U. S. 269, 271.)

*Robert E. Whalen* and *Alexander S. Lyman* for respondent. The Federal power in this instance is paramount and exclusive. (U. S. Const. art. 1, § 8; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Gilman* v. *Philadelphia*, 3 Wall. 713; *State* v. *W. & B. Bridge Co.*, 18 How. [U. S.] 421; *Wisconsin* v. *Duluth*, 96 U. S. 379; *Scranton* v. *Wheeler*, 179 U. S. 141; *Greenleaf Lumber Co.* v. *Garrison*, 237 U. S. 251; *Matter of Debs*, 158 U. S. 563; *Stockton* v. *B. & N. Y. R. Co.*, 32 Fed. Rep. 9.) It is competent for Congress to legalize what the state has declared to be illegal. (*State* v. *W. & B. Bridge Co.*, 18 How. [U. S.] 421; *Stockton* v. *Baltimore & N. Y. R. Co.*, 32 Fed. Rep. 9; 140 U. S. 699; *Decker* v. *B. & N. Y. R. Co.*, 30 Fed. Rep. 723.) Appellant's title to the land under water is inconsequential.

(*Stockton* v. *B. & N. Y. R. Co.*, 32 Fed. Rep. 9; *Gilman* v. *United States*, 166 U. S. 269; *Greenleaf Lumber Co.* v. *Garrison*, 237 U. S. 251.) The purpose of the Federal government to assume complete and exclusive control of the subject-matter is manifest. (6 Fed. Stat. Ann. 805, 813, 814; 9 Fed. Stat. Ann. [2d ed.] 53, 81, 82; Fed. Stat. Ann. 1909 Supp. 600, 601; 9 Fed. Stat. Ann. [2d ed.] 92, 93; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Houston & Texas Ry. Co.* v. *United States*, 234 U. S. 342; *Penn. R. R. Co.* v. *U. S.*, U. S. Sup. Ct., Nov. 10, 1919; *Southern Ry. Co.* v. *R. R. Comm.*, 236 U. S. 439; *Erie R. R. Co.* v. *New York*, 233 U. S. 671.) Chapter 713 of the Laws of 1917, if given the effect which appellant ascribes to it, would violate the contractual obligation clause of the Federal Constitution; so also would any construction of chapter 166 of the Laws of 1918 in derogation of rights acquired by defendant under chapter 388 of the Laws of 1913. (*Binghamton Bridge*, 3 Wall. 51; *N. O. W. W. Co.* v. *Rivers*, 115 U. S. 674; *Russell* v. *Sebastian*, 233 U. S. 195; *C. Canal Co.* v. *Louisiana*, 233 U. S. 362; *Erie R. R. Co.* v. *Pennsylvania*, 153 U. S. 628; *Adirondack Ry. Co.* v. *State*, 176 U. S. 335; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealy*, 224 N. Y. 187; *People ex rel. City of New York* v. *N. Y. Rys. Co.*, 217 N. Y. 310; *Holyoke Co.* v. *Lyman*, 15 Wall. 500.) Neither chapter 713 of the Laws of 1917 nor chapter 166 of the Laws of 1918 can be sustained under the guise of an amendment to defendant's charter. (*Lord* v. *Eq. Life Assur. Society*, 194 N. Y. 212; *City of New York* v. *Bryan*, 196 N. Y. 158; *Stockton* v. *B. & N. Y. R. Co.*, 32 Fed. Rep. 9; *People ex rel. Postal T. C. Co.* v. *Tax Comrs.*, 224 N. Y. 167; *Central Pacific R. R. Co.* v. *California*, 162 U. S. 91; *Southern Pacific R. R. Co.* v. *U. S.*, 183 U. S. 519; *People* v. *O'Brien*, 111 N. Y. 1; *Hill* v. *G. R. R. Co.*, 41 Fed. Rep. 610.)

ELKUS, J. This action is brought by the state of New York to restrain and enjoin " a trespass upon lands

belonging to The People of the State of New York, lying under the waters of the Hudson river in the counties of Albany and Rensselaer, and to restrain the erection and construction upon said lands of a purpresture, and a public nuisance," and to restrain the defendant from constructing a bridge, with two main spans, across the Hudson river.

This controversy is over the *kind* of bridge to be erected over the Hudson river, a short distance below Albany. The defendant desires to erect a *particular* bridge and the state is not opposed to the construction of *a* bridge at the location selected. Defendant desires to erect a bridge with two spans, one six hundred feet in width and the other four hundred and five feet in width, with piers in the bed of the river supporting the spans. The state of New York, at this time, insists that it shall be a bridge with a single span. The difference in cost, in favor of the first bridge, is $4,000,000.

Involved in this apparently simple question are to be considered:

*First.* The relative rights of the state and the Federal government over the Hudson river at a point entirely within the state.

*Second.* Has the state or the nation prior, or concurrent, or exclusive jurisdiction, to permit or authorize the construction of a bridge at such a place?

*Third.* The effect of the United States Bridge Act of March 23, 1906.

*Fourth.* Is the proposed bridge to be used for interstate commerce and, if so, the effect of that fact upon these propositions?

*Fifth.* The power of the state legislature by enactment to forfeit a property franchise granting authority to construct a bridge, but limiting the time of commencement of construction.

This appeal is from a judgment entered upon an order overruling a demurrer to the separate defenses contained

in the answer. These separate defenses substantially set forth the following:

1. The defendant is a railroad corporation organized under the laws of the state of New York for the construction of a railroad twenty-two miles in length connecting the Hudson division of the New York Central and Hudson River Railroad Company near Stuyvesant with the West Shore railroad, river division, near Feura Bush, with a branch connecting with the Boston and Albany railroad north of Schodack Landing.

2. All of the capital stock of the defendant, between January 8th, 1914, and December 23d, 1914, was owned by the New York Central and Hudson River railroad, at which latter date said owner consolidated with the New York Central Railroad Company, which thus became and now is the owner of all defendant's capital stock. The New York Central Railroad Company is engaged in interstate commerce and the transportation of United States mails.

3. The proposed railroad of defendant includes as an indispensable feature a bridge across the Hudson river at a point south of Castleton in the county of Columbia, New York.

4. The waters of the Hudson river are navigable from New York city to Troy, New York, including the waters at the proposed site of said bridge. Along a considerable portion of its course, the Hudson river constitutes a boundary between the states of New York and New Jersey. The waters of the Hudson at said site are in the state of New York and are subordinate and subject to the paramount right and authority of the United States under the Federal Constitution.

5. The legislature of New York state enacted chapter 388 of the Laws of 1913, which became a law April 28, 1913, granting defendant the right to construct, maintain and operate a bridge upon the line of its railroad between

14

Castleton and Schodack Landing. The bridge should have clearance of at least one hundred and thirty-five feet above the mean level of the Hudson and spans not less than three hundred feet in length from pier to pier. Plans were to be subject to the approval of the secretary of war and the construction of the bridge was to be commenced on or before May 1, 1914, and completed within five years. This, it is claimed, constituted a grant of a franchise. Defendant accepted and acted upon said franchise, expending prior to June 1, 1917, $380,000 for plans, rights of way and in erecting said bridge according to plans approved by the secretary of war. The act of the legislature it is also claimed constitutes a contract between the state of New York and the defendant which may not constitutionally be impaired.

After the enactment of chapter 388 of the Laws of 1913, defendant caused maps, surveys and profiles showing the route, including said bridge, to be made and filed the same with the public service commission of New York, together with its petition for certificate of convenience and necessity, and permission to begin construction of the bridge was obtained under date of November 26, 1913, as provided in the Railroad and Public Service Commissions Laws.

6. On March 13, 1914, Congress granted authority to defendant to construct, maintain and operate a bridge and approaches across the Hudson river at a point between Castleton and Schodack Landing according to the provisions of the Federal Bridge Act of March 23, 1906.

7. On August 9, 1916, Congress extended the time to commence and complete defendant's bridge to the 30th day of March, 1918, and the 30th day of March, 1920, respectively.

8. Thereafter plans were presented and hearings had resulting in the approval on May 2, 1917, of said plans by

the chief of engineers and by the secretary of war as required by the Bridge Act.

9. The determination of the secretary of war constitutes a determination by Federal authority that said bridge is a lawful structure and puts the question beyond state authority.

10. The New York legislature passed chapter 713 of the Laws of 1917, which was approved June 1, 1917. Said act is unconstitutional, null and void, as violative of the United States Constitution and acts of Congress enacted pursuant thereto:

*First,* as interfering with commerce contrary to article I, section 8, Constitution of the United States;

*Second,* Congress, having acted, its action is decisive;

*Third,* because it contravenes acts of Congress under its authority to regulate navigable waters; and attempts to supervise acts of Congress and violates article VI of the Constitution of the United States; impairs the obligations of a contract and deprives defendant of its property without due process of law.

The second defense sets forth:

1. The location of said proposed bridge is proper and no more favorable location can be found.

2. The plans of defendant necessarily contemplate and provide for dredging the channel of the Hudson river, making it practicable for vessels to pass under either span of the bridge without stop.   Ice jams do not form at the proposed location.   Piers and fenders of the bridge will not cause or facilitate the formation of ice jams.   In the event of floods, the piers and fenders of the proposed bridge will act as a guide to navigators and reduce risks of navigation.

3. The construction of a bridge such as required by chapter 713 of the Laws of 1917 will cost over four million dollars in excess of the type proposed and by reason of change of plans its erection will be delayed.

The channel of the Hudson river at the site of said

bridge as contemplated by the United States is along the westerly side of the river extending approximately four hundred feet from the westerly dike of said river at said place and dredged to a depth of twelve feet.   The waters of the Hudson river lying easterly of said point are more shallow than the waters of the channel, and by reason of the dredging proposed to be done the general location of the bridge will be improved for navigation.

There are already established and existing across the Hudson river at Albany, Troy and Poughkeepsie, bridges that have not as great clearance as that provided for the proposed bridge, according to the plans approved by the secretary of war, setting forth certain of the dimensions and stating that these bridges do not interfere with navigation.

The ordinary rules as to admissions on demurrer apply here; and also, if necessary, the allegations of the amended complaint may be considered.   (*Douglas* v. *Coonley*, 156 N. Y. 521.)

In addition to the matters above referred to, the amended complaint alleges:

The Hudson river is a navigable, tidal river, rising and flowing entirely in New York state to a point more than one hundred miles south of the site of the proposed bridge, where it becomes a boundary river between the states of New York and New Jersey.

Plaintiff is the owner in fee simple absolute and in trust for all the people of the state of all lands under the waters of the Hudson river at the point of the proposed bridge, except such as were on or about the 26th day of April, 1901, granted by the commissioners of the land office to one Patterson and one Elder.

The Hudson river is navigable from the Troy dam south to its mouth and is the conduit for a volume of annual freight of approximately the value of $125,000,000, and is navigated by the largest passenger carrying boats in the world, such as the *Washington Irving* and *Hendrick*

*Hudson.* New York has been constructing and has now about completed a system of barge canals, connecting the Great Lakes with the Hudson, costing the state more than $150,000,000. Upon its completion, the volume of freight transported on the Hudson river will be greatly increased, and in contemplation of this the United States has for years past been engaged in widening and deepening the channel of the Hudson from the Troy dam past the site of the proposed bridge to the city of Hudson and is considering the project of deepening the channel to permit navigation by ocean-going craft.

The site of the proposed bridge is one of great danger to navigation because of the shallow channel here changing its course from the east side to the west side of the river, together with contrary winds and currents there prevailing.

The Hudson river and its tributaries drain a watershed of 8,100 square miles, and spring thaws cause a rise of from 18 to 23.7 feet.

An ice gorge frequently forms at or near the point of the proposed bridge and causes floods as far north as Troy with consequent damage and expense to the state and its citizens.

The construction of the proposed bridge was not begun within the provisions of chapter 388 of the Laws of 1913 on the 1st day of May, 1914, nor prior to June 1, 1917. The act of June 1, 1917, chapter 713, which repeals chapter 388 of the Laws of 1913, authorizes the defendant to construct a bridge between the same points, with clearance of not less than one hundred and thirty-five feet and but a single span across the river, and provides for the approval of the state engineer and surveyor as to abutments, viaducts and approaches, as well as of the secretary of war of the United States. This approval has not been given, but, notwithstanding the provisions of chapter 713 of the Laws of 1917, defendant has prepared maps and plans for the construction of a bridge with two main spans supported

by three piers, and defendant has, since June 1, 1917, threatened and now threatens, unless restrained, to commence and continue the construction of such bridge and approaches and has notified the attorney-general of the state of New York that such is its intention. Such construction will be unlawful, dangerous to navigation, impair the value of the plaintiff's state barge canal and will facilitate the formation of ice gorges at said point, destroying the property of citizens, all of which damage is incapable of exact measurement. For such considerations, the proposed bridge, if constructed, will be an unlawful structure, a trespass and purpresture upon the lands of plaintiff, a hindrance and danger to navigation, a public nuisance from which plaintiff has no adequate relief or other remedy than injunction to restrain the construction of said bridge.

A brief chronology of the Federal and state statutes and acts affecting this litigation may be shown here for convenience and clearness.

1. 1899, March 3. United States River and Harbor Act (30 Stat. 1121), secs. 9 and 10, providing for the consent of Congress to build bridges across navigable rivers.

2. 1906, March 23. United States Bridge Act (34 Stat. 84), secs. 1 and 6, providing for approval of plans when Congress consents and that bridge so built be completed within three years of passage of act authorizing same.

3. 1913. Defendant incorporated in 1913 as a railroad corporation under the laws of New York.

4. 1913, April 28. Chapter 388 of the Laws of 1913. Act granting permission to defendant to construct a bridge at proposed location with more than one span over river.

5. 1914, March 13. (38 Stat. 308, ch. 38) United States act granting authority to defendant to construct a bridge at proposed location.

6. 1916, August 9.   (39 Stat. 445, ch. 307) United States act extending time to complete bridge to March 30, 1920.

7. 1917, May 2.   Secretary of War, after public hearings, approves plans for construction of bridge.

8. 1917, June 1.   Chapter 713, Laws of New York, 1917, repealing chapter 388, Laws of 1913, and authorizing construction of bridge with single span as desired by plaintiff.

9. 1918, April 9.   Chapter 166, Laws of New York, 1918, amending General Railroad Law providing that no bridge across the Hudson river may be built until approved by the state engineer and superintendent of public works.

This somewhat elaborate statement is deemed necessary to clearly show the facts and contentions material to this appeal.

Under our Constitution, the Federal government is possessed of only such powers as are granted to it.   All other powers are reserved to the several states.   When Congress exercises its authority and acts within its power, all other authority which conflicts or interferes with the Federal power must fall, for the sovereignty of Congress is plenary.   (*Prigg* v. *Commonwealth of Pennsylvania*, 16 Pet. 539; *Southern Railway Co.* v. *Railroad Comm. of Indiana*, 236 U. S. 439; *Penn. R. R. Co.* v. *Public Service Com. of Penn.* 250 U. S. 566.)

Congress is given authority over interstate commerce in article I, section 8, of the Constitution: " Congress shall have power   *   *   *   to regulate commerce with foreign nations and among the several states and with the Indian tribes."

In construing this power granted, the words must be understood as employed in their natural sense, as is said by Chief Justice MARSHALL in *Gibbons* v. *Ogden* (9 Wheat. 1, at 194): " Commerce among the states cannot stop at the external boundary line of each state, but may be

introduced into the interior." It is a comprehensive clause including within its intent the instruments and means by *which interstate commerce* is or may be carried on, even if those means or instruments are such as are inherently within a *single* state, such as the wharf of a transatlantic line, or the tracks over which pass trains *en route* from state to state, or the engine used to draw those trains, be it used for ever so short a haul within the state and if this authority extends to the tracks and the engine, though used wholly within the state, surely it also includes bridges over which both of these pass, and this is particularly true if that bridge cross a navigable stream, the first great recognized instrument of interstate commerce. (*Erie R. R. Co.* v. *New York,* 233 U. S. 671; *Pennsylvania* v. *Wheeling & Belmont Bridge Co.,* 18 How. [U. S.] 421.) The bridge in question, it is conceded, will be used for interstate commerce.

The Constitution containing the authority, and the power of Congress being plenary, it only remains to consider whether in the instant case Congress has acted in authorizing this bridge and by its action has excluded any further or other action by the state. An answer in the affirmative is conclusive for, as is well said by Chief Justice MARSHALL in *Gibbons* v. *Ogden* (9 Wheat. 1, at 196):

" It is the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution. * * *

" If, as has always been understood, the sovereignty of Congress, though limited to specified objects, is plenary as to those objects, the power over commerce with foreign nations, and among the several states, is vested in Congress as absolutely as it would be in a single government, having in its constitution the same restrictions on the

exercise of the power as are found in the constitution of the United States."

The presumption is that Congress in any action it has taken has acted within its powers and the same presumption is true as to action by the state legislature. Again, to use the words of Chief Justice MARSHALL, at page 204, in the case already cited:

" If Congress license vessels to sail from one port to another, in the same state, the act is supposed to be, necessarily, incidental to the power expressly granted to Congress, and implies no claim of a direct power to regulate the purely internal commerce of a state, or to act directly on its system of police. So, if a state, in passing laws on subjects acknowledged to be within its control, and with a view to those subjects, shall adopt a measure of the same character with one which Congress may adopt, it does not derive its authority from the particular power which has been granted, but from some other, which remains with the state, and may be executed by the same means. All experience shows, that the same measures, or measures scarcely distinguishable from each other, may flow from distinct powers; but this does not prove that the powers themselves are identical."

To determine whether Congress has acted and by its action excluded state action, it is necessary for us to examine and interpret all acts of Congress, claimed to be applicable to the facts as stated.

The first of these is the River and Harbor Act of March 3, 1899. This act is mainly concerned with maintaining freedom of navigation and preventing obstructions thereto from being erected. So far as the erection of bridges or other obstructions to navigation is concerned, it is an act of exclusion and prohibits their commencement until the consent of Congress is obtained together with the approval of plans by the chief of engineers and the secretary of war. (*Cummings* v. *Chicago*, 188 U. S. 410.)

This act does not prohibit the erection of such struc-

tures under the authority of the legislature of a state at points where both banks of the navigable water are parts of the same state, provided that the location and plans are submitted to and approved by the chief of engineers and the secretary of war before construction is commenced.

Under this act the authority of the state to authorize such structures wholly within its limits remains subject to the approval of Congress as expressed through its administrative officers. (*Miller* v. *Mayor of New York*, 109 U. S. 385.) It is clear in the instant case that both banks of the Hudson at the proposed site of the bridge and for many miles in either direction are wholly within the state of New York.

The next act affecting this question is the Bridge Act of March 23, 1906.

This act, section 1, begins as follows: " That when hereafter authority is granted by Congress to any persons to construct a bridge across or over any of the navigable waters of the United States, such bridge shall not be built or commenced until the plans and specifications," and other data have been submitted to the secretary of war and chief of engineers and approved by them. No deviation can be made from such plans without similar approval. Section 2 provides that a bridge built in accordance with the provisions of the act shall be a lawful structure and a post route of the United States.

The authority of the United States over the navigable waters is that of a supreme sovereign in so far as the authority is necessary under the interstate commerce provisions of the Constitution. As to all navigable waters, it has succeeded to the *jus publicum* as held by the King of England and holds such waters in trust for all the people of the United States under the Constitution. Its rights when exercised or to the extent exercised are paramount to the same *jus publicum* held by the state of New York for the people of the state. (*Lewis Blue Point Oyster C. Co.* v. *Briggs*, 198 N. Y. 287; affirmed, 229

U. S. 82; *Prigg* v. *Comm. of Penn.*, 16 Pet. 539; *U. S.* v. *Chandler-Dunbar W. P. Co.*, 229 U. S. 53.)

The state of New York, in addition to holding the *jus publicum* as to navigable waters within its boundaries over which the United States has not exercised its paramount authority, is also the holder of the *jus privatum* or title to the land under the navigable waters of the state and may make such grants of this submerged land as do not interfere with the *jus publicum* which it holds in trust for its citizens or which is created in the Federal government under the Constitution. (*Gibson* v. *United States*, 166 U. S. 269; *Scranton* v. *Wheeler*, 179 U. S. 141.)

Pursuant to the Bridge Act and *intra vires* of its charter, as granted by the state of New York, the defendant obtained from Congress authority to construct the bridge here sought to be enjoined. This authority is contained in an act approved by the President on March 13, 1914, and is substantially as follows:

" * * * Authority * * * is hereby granted to the Hudson River Connecting Railroad Corporation * * * to construct, maintain and operate a bridge, together with the necessary approaches thereto, across the Hudson River at a point suitable to the interests of navigation between Castleton and Schodack Landing, in accordance with the provisions of the Act * * * approved March twenty-third, nineteen hundred and six."

The Bridge Act, section 6, provides that actual construction of a bridge authorized thereunder shall be commenced within one year and completed within three years.

The question as to whether this provision was complied with becomes immaterial by reason of an act of Congress, approved by the President on August 9, 1916, providing:

" * * * That the time for the commencement and completion of the bridge of the Hudson River Connecting Railroad Corporation, under the provisions of the Act approved March thirteenth, nineteen hundred and four-

teen, be extended to the thirtieth day of March, nineteen hundred and eighteen, and the thirtieth day of March, nineteen hundred and twenty, respectively. * * * "

Under this latter enactment, the time to commence and complete the bridge was definitely set and whatever penalty of forfeiture may have been incurred by the defendant was waived by the only authority entitled to enforce such forfeiture. (*People* v. *Ulster & Delaware R. R. Co.*, 128 N. Y. 240.) Before the period set for commencement of construction had expired, this action was begun, on November 30, 1917.

Is the act of March 13, 1914, plus the act of August 9, 1916, such grant of authority as is contemplated in the Bridge Act to cause the application of that act to the proposed bridge?

To state the question seems to answer it. What other or higher authority could be given to construct a bridge than an act of Congress stating in terms that such authority is granted? Grant having been made as required by the Bridge Act, the condition governing application of that act has been complied with, and Congress, under its authority over commerce, has declared the bridge to be erected over a navigable stream to be a lawful bridge. Certainly the state cannot make unlawful that which Congress, under its plenary power over interstate commerce, has declared to be lawful. (*New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147, at 148; *Southern Railway Co.* v. *Railroad Comm. of Indiana*, 236 U. S. 439; *Prigg* v. *Commonwealth of Penn.*, 16 Pet. 539, at 618; *Erie R. R. Co.* v. *New York*, 233 U. S. 671; *Wisconsin* v. *City of Duluth*, 96 U. S. 379; *People ex rel. Postal Telegraph-Cable Co.* v. *State Board Tax. Comrs.*, 224 N. Y. 167.)

The plenary power of Congress under the Constitution lies dormant until Congress sees fit to exercise it and in this twilight zone of suspended power the sovereign power of the state is supreme and rights vested during that

period under state authority are not subsequently lost when Congress exercises its plenary power, although the entire authority of the state may be superseded as in the cases of bankruptcy and coinage.

Upon the argument of this case, much emphasis has been laid upon the decision of *People* v. *International Bridge Company* (223 N. Y. 137).   That case is clearly distinguishable from the present one in that Congress had not exercised its plenary power and authorized the construction of the International bridge.   The act of Congress passed in 1870 merely provided:

" That any bridge and its appurtenances which shall be constructed across the Niagara River from the City of Buffalo, New York, to Canada, in the pursuance of the provisions of an act of the Legislature of the State of New York entitled ' An Act to incorporate the International Bridge Company,' * * * shall be lawful structures and shall be so held and taken and are hereby authorized to be constructed and maintained as provided by said act and such amendments thereto, anything in the laws of the United States to the contrary notwithstanding."

This was merely a consent to the bridge as authorized by the state of New York in the charter and a waiver of objections which might be raised by the United States. By this act nothing was granted to the bridge company by the United States.   Its franchise depended wholly upon the New York act and that act, being an act of incorporation, was subject to amendment under the provisions of article VIII, section 1, of the New York State Constitution, provided such an amendment did not conflict with constitutional rights.   (*People* v. *O'Brien*, 111 N. Y. 1.)

Congress by the act referred to consented to any bridge constructed at this place under the charter of the International Bridge Company and declared any such bridge lawful and bestowed the control of that bridge upon the legislature of the state of New York.   The consolidating

act of New York made provision that the bridge " shall be as well for the passage of persons on foot and in carriages and otherwise as for the passage of trains." This is mandatory, must be complied with and insistence upon this charter requirement by the state does not violate any right of the corporation. The legislature, under its right to amend, amended the charter in 1915, and imposed a penalty upon the corporation for its failure after January 1, 1916, to build a roadway for vehicles and a pathway for pedestrians and this amendment was held valid. This was the decision of the *International Bridge* case so far as is pertinent to the present appeal.

In the instant case, considering for the moment only the authority granted by New York statute, we find that on May 2, 1917, the defendant, a railroad corporation under the laws of this state, was vested with proper credentials from the public service commission to construct a railroad to be used for interstate commerce between the various points named as its terminals.

Defendant then owned a franchise right to construct a bridge of a certain character across the Hudson river near Castleton, such right, granted by the legislature, being subject to the approval of the secretary of war of the United States. The right to repeal this franchise was not specifically reserved in the granting act.

On this date (May 2, 1917) the secretary of war approved its plans for the erection of a bridge.

Therefore, on the second day of May, 1917, the right of the defendant to build a bridge for public railroad purposes according to the plans that day approved became complete. (*Coxe* v. *State of N. Y.*, 144 N. Y. 396, at 407; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75.)

It is claimed, however, that the act (Chap. 388, Laws of 1913) contained a condition that the construction of the bridge be commenced before May 1, 1914, and completed within five years and that this condition has not been complied with. Such conditions may well be treated as

conditions subsequent, and if so a failure to comply with them would not *ipso facto* forfeit the charter unless provision for the forfeiture be included in the grant.   (*Matter of New York & L. I. Bridge Co.* v. *Smith,* 148 N. Y. 540.)

Prior to the enactment of 2 Revised Statutes, 462, section 31, following the decision of Chancellor KENT in *Attorney-General* v. *Utica Insurance Co.* (2 Johns. Ch. 371), equity refused to take jurisdiction of suits for injunction by the attorney-general to restrain corporations from carrying on business in violation of public acts.   (*People* v. *Ballard,* 134 N. Y. 269.)   It may be well doubted whether under that act property rights, even when granted by the state, can be declared forfeited in a suit in equity without a trial by jury.   (New York State Constitution, art. I, sec. 2; *Colon* v. *Lisk,* 153 N. Y. 188; *Hudson* v. *Caryl,* 44 N. Y. 553.)

Property rights cannot be forfeited by mere legislative enactment.   Chapter 713 of the Laws of 1917 is predicated upon the repeal of chapter 388 of the Laws of 1913 which granted the property franchise.   Without this repeal, the remainder of the provisions of chapter 713 are without effect.   The repeal being illegal, the statute must fall.   It is clearly not based on the exercise of the police power.   *It merely substitutes one grant for another without obtaining the consent of the grantee.*   (*People* v. *O'Brien,* 111 N. Y. 1; *Lord* v. *Equitable Life Assur. Socy.,* 194 N. Y. 212.)

There is a distinction between the franchise to be a corporation and a franchise as a property right.   The state of New York created this defendant to build a railroad between certain points.   It was *intra vires* for the railroad to accept from any source any rights or property to further this purpose.   It obtained a franchise from the state to build this bridge and later obtained a similar franchise from Congress under its plenary power over interstate commerce.   It accepted these franchises and in reliance

thereon, as is conceded by the demurrer, has expended money "in erecting such bridge according to plans approved by the secretary of war prior to June 1st, 1917." Congress having declared the bridge proposed to be erected lawful and authorized the defendant to erect same, no authority remained in the state to make any new or other regulations or requirements. (*Erie R. R. Co.* v. *New York,* 233 U. S. 671.)

There is still to be discussed the amendment to the Railroad Law contained in chapter 166 of the Laws of 1918. Although this act was not a law at the time this suit was begun, it is a general law of the state and as such its relevancy and effect must be considered.

As already shown, this defendant *intra vires* of the charter obtained the grant of a franchise to build a bridge at Castleton from Congress. The right of Congress to make this grant and to authorize this bridge was plenary, and in the exercise of that right it made this grant to a corporation then competent to receive and exercise it. Can the legislature of New York state interfere with the plenary power of Congress to authorize this bridge for interstate commerce by depriving the corporation, authorized and vested with a grant of franchise from Congress, of the power *intra vires* to avail itself of the franchise by subsequently imposing the penalty of injunction and forfeiture of its charter for exercise of the franchise? The answer must be in the negative. (*Erie R. R. Co.* v. *New York,* 233 U. S. 671; *Union Bridge Co.* v. *U. S.,* 204 U. S. 364; *Gilman* v. *Philadelphia,* 3 Wall. 713.) To hold otherwise, would be to permit the legislature to do by indirection what it could not do directly and would result in depriving Congress of the agency through which it sought to act to obtain results under its plenary powers over commerce, and thus nullify the acts of Congress except as such acts may be carried out by departments of the Federal govern-

ment.    (*McCulloch* v. *Maryland,* 4 Wheat. 316, at .408; *Willamette Iron Bridge Co.* v. *Hatch,* 125 U. S. 1; *Hannibal & St. Joseph R. R. Co.* v. *Missouri River Packet Co.,* 125 U. S. 230.)    The fact that the defendant is a New York corporation is immaterial.

The law will not permit that to be done by indirection which is unlawful directly.    *Quando aliquid prohibetur ex directo prohibetur et per obliquium.*    (Co. Lit. 223.) Congress under its plenary power has authorized the proposed bridge here sought to be enjoined and granted authority to accomplish that purpose to the defendant, which was empowered by the state to accept the grant. It lies not in the mouth of the legislature to defeat the power of Congress, properly exercised, by penalizing the defendant for exercising its franchise from Congress to accomplish a purpose over which Congress has plenary power.

The judgment appealed from should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND and McLAUGHLIN, JJ., concur; ANDREWS, J., concurs in result.

Judgment affirmed.