LITTLE FALLS FIBRE COMPANY and Others, Plaintiffs, *v.* HENRY FORD AND SON, INCORPORATED, Defendant.

Supreme Court, Saratoga County, December 8, 1925.

Waters and watercourses — motion for temporary injunction in action to compel removal of flashboards from Federal dam near Troy, for injunction restraining maintenance of said flashboards and for damages to water power site — defendant erected flashboards on authority of Federal Power Commission pursuant to Federal Water Power Act, § 15, for purpose of increasing power at its power plant — erection of said flashboards not for benefit of Federal navigation — maintenance of flashboards will constitute continuing trespass — plaintiffs entitled to temporary injunction.

Plaintiffs, owners of a dam in the Mohawk river near its confluence with the Hudson river near Troy, which for nearly a century has been utilized by plaintiffs and their predecessors as a water power site, are entitled to an order requiring the removal of flashboards installed by the defendant on the crest of the main spillway of the Federal dam in the Hudson river near Troy at a point below plaintiffs' dam, and restraining the further use of said flashboards on defendant's dam, pending the outcome of plaintiffs' action for damages to its water power site and the property adjacent thereto and for a permanent injunction, since said flashboards were erected for the purpose of increasing the power at defendant's power plant rather than to benefit Federal navigation as claimed by defendant, and are causing substantial damages to plaintiffs'

property and water site and will, if permitted to exist, constitute a continuing trespass.

It is no defense that defendant erected said flashboards pursuant to a permit granted by the Federal Water Power Commission under section 15 of the Federal Water Power Act, for it appears that the effect of the permit under said Power Act merely releases the Federal government from liability, but does not purport to relieve the defendant from liability for damages to riparian owners, where said flashboards were erected solely to increase defendant's water power.

MOTION for an injunction *pendente lite* in action to compel the removal of flashboards from Federal dam and for an injunction restraining the maintenance of the flashboards on the dam.

*Thomas O'Connor* [*George E. O'Connor* of counsel], for the plaintiffs.

*Whalen, Murphy, McNamee & Creble* [*Robert E. Whalen* of counsel], for the defendant.

HERRICK, J. Motion in which the plaintiffs ask for an order directing the removal by the defendant of flashboards heretofore installed by it on the crest of the main spillway of the Federal dam in the Hudson river near Troy, N. Y., and to restrain the further use of the flashboards on the dam during the pendency of this action.

To intelligently pass on the motion as presented, it is necessary to first consider the facts leading up to this litigation between the parties.

About the year 1826 the State of New York constructed a dam in the Hudson river at Troy with a crest elevation of thirteen and two-tenths feet, Barge Canal datum. Three years later the predecessors in title of the plaintiffs constructed a dam in the Mohawk river near its confluence with the Hudson and the plaintiffs and their predecessors have since, for nearly a century, utilized the water power made available by the building of this dam in conducting various manufacturing enterprises.

In 1915 the United States government completed the Federal dam referred to, together with a lock in connection therewith. The dam and lock are located about 1,000 feet upstream from the site of the said State dam. The construction of the Federal dam was authorized by an act of Congress approved June 25, 1910, entitled "An Act Making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes." (36 U. S. Stat. at Large, 630, 635, chap. 382.)

The Federal dam is provided with a main spillway and an auxiliary spillway. The height of the crest of the main spillway above mean sea level is fourteen and thirty-three one-hundredths

feet. The height of the crest of the auxiliary spillway above mean sea level is sixteen and thirty-three one-hundredths feet.

On June 10, 1920, Congress approved an act (41 U. S. Stat. at Large, 1063, chap. 285), known as the Federal Water Power Act, to create a Federal Power Commission; to provide for the improvement of navigation; the development of water power; the use of public lands in relation thereto, and to repeal section 18 of the River and Harbor Appropriation Act (40 id. 269, chap. 49) approved August 8, 1917, and for other purposes.

The Federal Water Power Act (41 U. S. Stat. at Large, 1063, chap. 285, § 1) provides that the membership of the Commission shall be composed of the Secretary of War, the Secretary of the Interior and the Secretary of Agriculture. This act (41 id. 1065, chap. 285, § 4, subd. d), among other things, vests in the Federal Power Commission authority to issue licenses for the purpose of constructing, operating and maintaining dams, water conduits, reservoirs, power houses, transmission lines or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission and utilization of power across, along, from or in any of the navigable waters of the United States, or upon any part of the public lands and reservations of the United States, or *for the purpose of utilizing surplus water or water power from any government dam.*

Subsequent to the creation of the Federal Power Commission, the defendant made application to that body and in March, 1921, received and accepted a license to enter upon the lands of the United States, adjoining and appurtenant to the west end of the Federal dam; to occupy and utilize the said lands and the banks, shores, bed and surplus water of the river; to construct on said lands and said river at the location specified, the works described in the application. Following the granting of the license and pursuant to the terms thereof, the defendant during the years 1922 and 1923 constructed a power house for the development of hydraulic power and the conversion of the same into electric energy and has since continued to operate the said power plant, utilizing the surplus water drawn from the pool formed by the said Federal dam for that purpose. The license issued to the defendant by the said Federal Power Commission is entitled " Water Power License, Project # 13." The following are some of the provisions of the said license, material to this motion:

" 7. The licensee shall at all times be controlled by such reasonable rules and regulations in the interest of navigation, including the control of the level of the pools as may be made from time to time by the Secretary of War."

" 9. If the display of lights and signals on any work hereby authorized is not otherwise provided by law, the licensee shall install, maintain and operate at its own expense such lights and signals as may from time to time be prescribed by the Secretary of War.

" 10. Except when prevented by flood or other cause beyond his control, the licensee shall provide from this project and deliver at a suitable point in his power house such electric current, not exceeding 320,000 kilowatt hours per year as may be necessary for power, light and other purposes for the operation, repair and upkeep of the United States Lock at the Troy end of the dam; this current to be available at all times, and at a voltage to be agreed upon between the district engineer and the licensee. The licensee shall furnish, install and maintain all necessary controlling and registering devices for the delivery of the current. If and when the interests of navigation require the construction of a second lock, the licensee shall, upon the completion of the second lock furnish for the lighting and operation thereof, such additional current, not to exceed a total for both locks of 600,000 kilowatt hours per year, as may be necessary."

The Hudson and Mohawk rivers at the several places referred to are navigable waters. (*West Virginia Pulp & Paper Co.* v. *Peck*, 189 App. Div. 286; *Waterford El. L., H. & P. Co.* v. *State*, 208 id. 273.)

The provisions of the said Federal Water Power Act have been declared constitutional. (*Alabama Power Co.* v. *Gulf Power Co.*, 283 Fed. 606.)

Without doubt, the Federal government acting under authority of law and in the interests of navigation, has the right to maintain the dam at such elevation as shall be found necessary. It could in the interests of navigation lawfully maintain the main spillway of the dam by the use of flashboards or otherwise to the level of the crest of the auxiliary spillway.

" When Congress exercises its authority and acts within its power, all other authority which conflicts or interferes with the Federal power must fall, for the sovereignty of Congress is plenary. * * * The authority of the United States over the navigable waters is that of a supreme sovereign in so far as the authority is necessary under the interstate commerce provisions of the Constitution." (*People* v. *Hudson River Connecting Railroad Corp.*, 228 N. Y. 203, 215, 218.)

The defendant after the completion of its said power plant and in September, 1924, made application to the Federal Power

Commission for a permit to install flashboards on the main spillway of the Troy dam. The request for the permit and the permit itself are shown from the following correspondence:

"*September* 22, 1924.

"UNITED STATES ENGINEER OFFICE,
     "Room 401, 467 Broadway,
          "Albany, New York:

"GENTLEMEN.— We have the honor to request that we be permitted to install flashboards on the Troy Dam in connection with the operation of our power house.

• "We are attaching hereto tracing and four copies of blue prints covering the said installation.

"Very truly yours,
                    "HENRY FORD & SON
"JFT. JC                            J. F. THOLL."

"WAR DEPARTMENT
    "UNITED STATES ENGINEER OFFICE, FIRST DISTRICT,
          "New York City.
    "Room 710, Army Bldg., 39 Whitehall St.  JB /AF
                                        "*Jan.* 12, 1925.
"SUBJECT:
"To:  THE FORD MOTOR COMPANY,
              "Green Island, N. Y.:

"GENTLEMEN.— Referring to your request of Sept. 22, 1924, for permission to install flashboards on the Troy Dam in connection with the operation of your power house, there is enclosed herewith, copy of regulations approved by the Secretary of War on Dec. 2, 1924, to 'Govern the Regulation of Pool Level and Maintenance of Flashboards at the Federal Dam, Troy, N. Y., under Water Power License No. 13, Granted to Henry Ford & Son, Inc.'

"For and in the absence of the District Engineer.

"Very truly yours,
                "BREHEN SOMERVELL,
"Ecnl:                 "*Major, Corps of Engineers, Assistant.*
    "Hudson 377 /210"

In January, 1925, the permit applied for was issued to the defendant, accompanied by regulations approved by the Secretary of War, governing the pool level and the maintenance of the flashboards. These regulations were in writing and were accompanied by blue prints, detailing the plan of installation and the manner of maintenance of the flashboards on the dam.

The noun "permit" means a license, an allowance, a sufferance, a toleration, an authorization. (30 Cyc. 1461.)

The verb " permit " is synonymous with to suffer, to allow, to let; it is also equivalent to give leave, to license, to warrant in writing, to grant, to empower, to authorize, to sanction.   (30 Cyc. 1461; *Coon* v. *Froment,* 25 App. Div. 250, 252.)

The permit granted to the defendant is, therefore, in the nature of a license or a warrant in writing, granting leave to the defendant to install and maintain the flashboards on the dam subject to the Federal regulations accompanying the permit.   It may be that the Federal government under section 18 of the said Federal Water Power Act (41 U. S. Stat. at Large, 1073, chap. 285) may lawfully confer upon the defendant the power to do any act in furtherance of the Federal ends which it could do, but it is not necessary to determine that question on this motion.   The controlling question here is whether the real purpose to be served by the placing of the flashboards on the dam and their maintenance there was a public one, in the interest of navigation, or a private one in the interest of the defendant.   In other words, was the permit intended and expected to improve navigation or was it intended and expected to improve the hydro electric power plant of the defendant or was it intended for the improvement of both?

The defendant seeks to justify its act in raising the crest of the main spillway of the dam by asserting that the flashboards were erected and are maintained there by it pursuant to the regulations of the Federal Power Commission approved by the Secretary of War December 2, 1924, and that the defendant in doing the acts complained of was and is acting for and as an agency of the Federal government which has authorized and approved the maintenance and erection of flashboards for the benefit of interstate and foreign commerce.

The plaintiffs most certainly are entitled to the free and unhampered use of their properties without interference on the part of the defendant.   In any society the fullness and sufficiency of the securities which surround the individual in the use and enjoyment of his property constitute one of the most certain tests of the character and value of the government.

The defendant insists that its act, of which the plaintiffs complain, does not come within this recognized rule, but on the contrary, what was done was for the benefit of interstate and foreign commerce.   To label an act " for the benefit of interstate and foreign commerce " does not necessarily make it such.   The correctness of the label must be determined from the facts.

Paragraph " ninth " of the complaint alleges: " The defendant for the purpose of aiding and improving the operation of its said water power plant and of increasing the power which it could pro-

cure therefrom, erected or caused to be erected, upon the crest of said dam in the Hudson river, barriers or boards known as flashboards, to a height of upwards of two feet whereby the height of said dam and the elevation of the water impounded thereby has been raised upwards of two feet."

Paragraph " three " of the answer denies " that the flashboards mentioned in paragraph ' ninth ' of the complaint were erected to a height of upwards of two feet above the crest of the dam and denies that the elevation of the water impounded thereby has been raised upwards of two feet." The answer fails, however, to deny the remaining allegations of this paragraph of the complaint and the defendant must, therefore, be presumed to admit that the flashboards were placed on the dam " for the purpose of aiding and improving the operation of its said water power plant and of increasing the power which it could procure therefrom."

Thus it is clear that the flashboards were not placed on the dam in furtherance of the Federal ends unless the defendant's power plant is operated for the Federal benefit and the additional power sought by the defendant is necessary for that purpose.

Paragraph " 10 " of the Water Power License, Project No. 13, provides that the defendant shall deliver at a suitable point in its power house from this project a stated quantity of electric current for power, light or other purposes for the operation, repair and upkeep of the United States lock at the Troy end of the dam.

Paragraph " 12 " of the license provides that the defendant shall pay an annual charge for the reimbursement of the United States for the cost of the administration of the act and an annual charge of $5,000 for the use of the Federal lands and the surplus waters taken from the dam.

As has already been made to appear, the Federal government in the interests of navigation could lawfully maintain the spillway of the dam at any height necessary in furtherance of the Federal ends. In such case the act of the Commission would be under authority of law and would have the sanction of the Federal government behind it. (*People* v. *Hudson River Connecting Railroad Corp.*, 228 N. Y. 203, 215; *Bellinger* v. *N. Y. C. R. R.*, 23 N. Y. 42; *Burmaster* v. *State of New York*, 186 App. Div. 131; affd., 227 N. Y. 653.)

But can the Federal Power Commission acting under congressional authority lawfully confer such permission upon the defendant for the purpose of improving the water power of its hydro electric plant, notwithstanding that the Federal government receives something in return in the nature of service and of rental value?

Section 10, subdivision (c), of the " Act to Create a Federal Power

Commission " reads: " Each licensee hereunder *shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor.*" (41 U. S. Stat. at Large, 1069, chap. 285, § 10, subd. c.)

" A legislative permission neither implies a right to appropriate property without compensation; nor confers a license to commit a nuisance. To base upon a legislative grant of power to do a thing an immunity from consequences, which deprive, or tend to deprive, a person of that which is his property, there should, at least, be found a direction which is clear and quite unmistakably imperative. \* \* \*

" If the results complained of are unavoidable, then we may not assume a power, implied from the permission of the charter, to destroy the plaintiff's property without compensation. The Legislature *could not* authorize such an injury without requiring payment for the consequences and *it has not assumed to do so.*" (*Sammons* v. *City of Gloversville*, 175 N. Y. 346, 352.)

Nor could Congress lawfully authorize such an injury for such a purpose without requiring payment for the consequences, and as appears from subdivision (c) of section 10 of the Federal Water Power Act, *it has not assumed to do so.* (*Pumpelly* v. *Green Bay Co.*, 80 U. S. [13 Wall.] 166; Act to Create a Federal Power Commission, § 10, subdivision C; *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312; *United States* v. *Lynah*, 188 id. 445; *United States* v. *Cress*, 243 id. 316.)

The field of limitation on the power of the government to take private property for public uses is discussed with unusual clearness by the late Mr. Justice BREWER in 148 United States, 312, and 188 United States, 445. There this illustrious jurist, scholar and master of English composition and expression has stated the law in language that leaves little or no room for further discussion of the subject under review. In the course of his opinion in *Monongahela Navigation Co.* v. *United States* he makes use of a quotation from Mr. Justice BRADLEY's opinion in *Boyd* v. *United States* (116 U. S. 616, 635) which may properly be referred to in disposing of this motion. The quotation reads: " Illegitimate and unconstitutional practices get their first footing in that way, namely; by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy and leads to gradual depreciation of the right, as

Supreme Court, December, 1925. [Vol. 126

if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsla principiis.*"

Having reached the conclusion that the maintenance of the flashboards on the crest of the main spillway of the dam is the cause of damage to the plaintiffs and is without legal justification, the question remains whether an order should be made directing the removal of the flashboards from the dam and restraining their use thereon during the pendency of this action.

The " eleventh " paragraph of the complaint charges " that the defendant purposes and intends to continue the maintenance of said flashboards and the raising of the elevation of the water upon the said real property and water power of the plaintiffs and thereby to continue to cause to the plaintiffs and to their property and water power serious damage, as aforesaid, and has refused to remove said flashboards."

The " fourth " paragraph of the answer alleges that defendant does not deny that it purposes and intends to continue the maintenance of said flashboards at not more than two feet above the crest of said dam.

From this reference to the pleadings, it is apparent that the defendant intends to maintain the flashboards on the crest of the dam regardless of the effect thereof on the property of the plaintiffs.

In their moving affidavits the plaintiffs assert that they are sustaining serious property damage as a result of the defendant's act in thus raising the crest of the main spillway of the dam, and from this reference to the pleadings it is apparent that the injuries of which the plaintiffs complain, unless the court intervenes, may be expected to continue. Such an invasion, if unwarranted by law, constitutes a trespass and a continuation thereof would constitute a continuing trespass.

In so far as the plaintiffs and the defendant are concerned, the plaintiffs are entitled to have the waters in question flow from the dam in the normal way and without obstruction by the defendant. It is the duty of equity to safeguard the rights of the plaintiffs and not to compel them to institute suits at law from day to day by reason of continuous trespasses. (*Corning* v. *Troy Iron & Nail Factory,* 40 N. Y. 191; *Whalen* v. *Union Bag & Paper Co.,* 208 id. 1; *Amsterdam Knitting Co.* v. *Dean,* 162 id. 278; *Rothery* v. *New York Rubber Co.,* 90 id. 30; *Mudge* v. *Salisbury,* 110 id. 413; *Mc Kee* v. *D. & H. C. Co.,* 125 id. 353.)

A court of equity has jurisdiction of an action to restrain the commission of a continuing trespass, because the injunction prevents

a multiplicity of actions which is a grievance to the public and a burden upon the public. (*Ackerman* v. *True,* 175 N. Y. 353; *Coatsworth* v. *Lehigh Valley R. Co.,* 156 id. 451; *Corning* v. *Troy Iron & Nail Factory,* 40 id. 191; *Garvey* v. *Long Island Railroad Co.,* 159 id. 323.)

Where the damages are substantial, an injunction to persons so substantially injured is a matter of right. (*Warren* v. *City of Gloversville,* 81 App. Div. 291, 293.)

From the papers submitted on this motion and from the authorities referred to in this memorandum, this would seem to be a proper case for judicial intervention.

An order may, therefore, be prepared and settled according to the views herein expressed.

Motion granted, with the usual motion costs.