CITY OF NEWARK (JERSEY CITY et al., Interveners) v. CENTRAL R. CO. OF NEW JERSEY et al.

(Circuit Court of Appeals, Third Circuit. February 29, 1924.)

No. 2998.

1. Navigable waters ⬅2—Congress has constitutional power to control.

The constitutional power of Congress to regulate interstate and foreign commerce extends to the regulation of such commerce on both land and water, to the control of the navigable waters of the country and the erection of piers, bridges, and all other instrumentalities of commerce which in the judgment of Congress may be necessary or expedient for the exercise of such power.

2. Commerce ⬅8(1)—Power of Congress to regulate cannot be interfered with by state.

The constitutional power of Congress to regulate interstate and foreign commerce is supreme, and cannot be rendered impotent by anything a state may do.

3. Navigable waters ⬅2—Power of Congress to regulate not affected by fact that wholly within state.

It is immaterial to the power of Congress to regulate navigable waters whether they are wholly within the boundaries of one state or lie between or extend into two states.

4. Navigable waters ⬅20(2)—Power of state over inside waters is plenary in the absence of legislation by Congress.

A state has plenary power to authorize the construction of a bridge over navigable waters within its borders until the dominant power given to Congress by the Constitution is exercised by appropriate legislation, but,

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

when the power of the state and federal governments come in conflict, the latter must control and the former yield.

**5. Navigable waters ⊕20(2)—Congress has plenary power to authorize construction of railroad bridge over navigable waters.**

Where Congress, pursuant to Act March 23, 1906 (Comp. St. §§ 9961–9968), authorized the construction of a railroad bridge over navigable waters within a state, though the state had refused its consent, it acted in the exercise of a power which is plenary, supreme, and exclusive, and which may not be interfered with by the state.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in equity by the City of Newark and others against the Central Railroad Company of New Jersey and another. From a decree dismissing the bill, complainants appeal. Affirmed.

For opinion below, see 287 Fed. 196.

Jerome T. Congleton, Corp. Counsel, of Newark, N. J., for appellant city of Newark.

Thomas F. McCran, Atty. Gen., and Harrison P. Lindabury, Asst. Atty. Gen., for intervening appellant state of New Jersey.

Thomas J. Brogan, Corp. Counsel, of Jersey City, N. J., for intervening appellant city of Jersey City.

George W. Wickersham and Paxton Blair, both of New York City, of counsel, for appellants.

George R. Holmes, of Jersey City, N. J. (Richard V. Lindabury, of Newark, N. J., of counsel), for appellee Central R. Co., of New Jersey.

Julius Henry Cohen, of New York City, for appellee Port of New York Authority.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court denying a preliminary injunction and dismissing the bill filed by the city of Newark. The city of Jersey City and the state of New Jersey intervened as parties complainant. The object of the bill was to restrain the Central Railroad Company of New Jersey from building a drawbridge across the mouth of Newark Bay below the city of Newark, between the city of Elizabeth in Union county and the city of Bayonne, in Hudson county, N. J., to replace a drawbridge constructed at about the same location shortly after 1860, and since then maintained by that company, pursuant to an act of the Legislature of New Jersey approved February 23, 1860 (P. L. 1860, c. 64). This act authorized the construction of a bridge "with a pivot draw with two openings, each of seventy-five feet in width, at right angles to the main channel."

By an act of the Legislature of New Jersey, approved April 8, 1914, (P. L. 1914, c. 123), a harbor commission was created which provided in section 4 that all plans involving the construction, change, alteration, or modification of any bridge over any navigable water or stream of that state should first be submitted to the harbor commission, and that no such work should be commenced or executed without its approval,

and any work commenced without its approval was declared to be a purprestiure and public nuisance.

The states of New York and New Jersey by agreement created thereafter, in 1921, a district known as the Port of New York district, which embraces among other places all the waters of Newark Bay, including the location of the proposed new bridge. It also created a joint commission known as the Port of New York Authority. This body consists of three commissioners from each state and is a nominal defendant. It has adopted "a comprehensive plan for the development of the port of New York." This plan includes Newark Bay, over which the bridge is to cross, but the bridge does not appear upon this plan. The Port Authority filed an answer in which it asked the court to "determine whether 'by law' the said new bridge is 'a purprestiure and a public nuisance.'" Not being convinced of its legal duties, it appeared in effect as amicus curiæ, and prayed the court to "determine its legal duties in the premises."

By virtue of an act of the Legislature of New Jersey approved April 8, 1915 (P. L. 1915, c. 242), the duties of the harbor commission devolved upon the Board of Commerce and Navigation. Three times, February 16, 1917, June 12, 1918, and February 2, 1922, the railroad company applied to the Board of Commerce and Navigation for approval to construct the proposed bridge across Newark Bay, but the Board denied the applications.

The defendant company secured the passage by Congress on August 8, 1919 (41 Stat. 277), of an act giving it authority to construct, maintain, and operate the proposed drawbridge in accordance with an act of Congress entitled "an act to regulate the construction of bridges over navigable waters," approved March 23, 1906 (34 Stat. 84 [Comp. St. §§ 9961–9968]). This is the general bridge Act under the authority of which all bridges have since its passage been built. Subsequent acts authorize the construction of particular bridges in accordance with the general provisions of this act, which requires any bridge built pursuant to its authority to be commenced within one year and completed within three years from the date of the approval of the act authorizing the construction. The bridge in question was not commenced within one year, and so the authority given to the defendant company expired and became null and void on August 8, 1920. The defendant secured the passage by Congress of another act, approved February 15, 1921 (41 Stat. 1099), extending the times for commencing and completing the construction of the bridge, authorized by the act of Congress approved August 8, 1919, two and five years respectively from the date of the approval of the act.

The act of March 23, 1906, supra, further provides that when authority is granted by Congress to construct and maintain a bridge across any navigable waters of the United States, such bridge shall not be built or commenced until the plans and specifications for its construction, together with such drawings and map of the proposed construction and location as may be required for a full understanding of the subject, have been submitted to and approved by the Secretary of War and Chief of Engineers. The defendant submitted the required plans and specifications, drawings, and map to the Secretary of

War and Chief of Engineers and secured their approval. It has commenced the construction of the bridge in accordance with these plans.

The city of Newark alleges that it owns certain real estate and riparian rights appurtenant thereto, located on the westerly side of Newark Bay, which is a navigable tidal body of water lying wholly within the state of New Jersey; that the city is engaged in improving this real estate for transportation, shipping, and other industrial purposes; that the bridge maintained for many years at the locus in quo by the defendant has been, and the proposed new bridge will be, a serious obstruction to the navigation of Newark Bay by ocean-going steamers and sailing crafts, and that the proposed new bridge is obstructive of and inimical to the comprehensive development planned by the states of New York and New Jersey in the Port of New York district. The city of Jersey City avers that it owns lands above the bridge on Newark Bay and the Hackensack river and joins in the allegations of the city of Newark. The state of New Jersey alleges that the defendant has not obtained the approval of the state Board of Commerce and Navigation. They contend that, since the approval of this board was not obtained by defendant, the proposed bridge will constitute a purpresture and public nuisance, and that the action of the Secretary of War and Chief of Engineers in approving the bridge is arbitrary and void because the act of Congress, authorizing the construction of the bridge without the approval of the state of New Jersey, violates the rights guaranteed to complainants by the Fifth and Tenth Amendments to the federal Constitution.

The amendments invoked declare that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation," and that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

The complainants contend that these amendments require that the concurrent consent of both state and federal government be obtained before a bridge over navigable waters wholly within one state may be lawfully constructed. Disregarding at present the contention of the respondent that the waters in question are not wholly within the state of New Jersey, is the proposition sound? The decision of this case depends upon the answer to this question. The state of New Jersey refused to give its consent, and, if that consent is necessary before the bridge may be lawfully built, the will of the state, and not that of the federal government, is supreme.

[1] It has many times been declared by the Supreme Court that when Congress enters the field of regulation and speaks, state regulation is excluded because of the paramount authority of Congress, provided it has spoken on a subject over which it has jurisdiction. The Constitution provides that—

"The Congress shall have power * * * to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." Article 1, § 8, cl. 3.

[2, 3] It is thus seen that power to regulate commerce among the several states is expressly delegated to the United States by the Con-

stitution in the most general and absolute terms. This power extends to the regulation of commerce on both land and water, to the control of the navigable waters of the country and the lands under them, and to the erection of piers, bridges, and all other instrumentalities of commerce which, in the judgment of Congress, may be necessary or expedient for the exercise of this power. Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U. S. (18 How.) 421, 15 L. Ed. 435; Erie Railroad Company v. New York, 233 U. S. 671, 34 Sup. Ct. 756, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138. This power is unrestricted except by constitutional limitations. Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126; Philadelphia Company v. Stimson, Secretary of War, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570. If it "regulates commerce with foreign nations, and among the several states, and with the Indian Tribes," the power of Congress is supreme and is not rendered impotent by anything that a state may or can do. Economy Light Co. v. United States, 256 U. S. 113, 121, 41 Sup. Ct. 409, 65 L. Ed. 847. It is admitted that this bridge is to serve interstate commerce and Newark Bay is navigable. The regulation of commerce is the object of the constitutional care and the source of congressional power to regulate navigation and navigable streams. Stockton v. Baltimore & N. Y. R. Co. (C. C.) 32 Fed. 9. Whether the waters are wholly within the boundaries of one state or lie between or extend into two states is immaterial. Decker v. Baltimore & N. Y. R. Co. (C. C.) 30 Fed. 723.

[4] From an early date it has been recognized that a state has power to authorize the construction of a bridge over navigable waters within its borders. Willson v. Black Bird Creek Marsh Co., 27 U. S. (2 Pet.) 245, 7 L. Ed. 412; Escanaba Company v. Chicago, 107 U. S. 678, 2 Sup. Ct. 185, 27 L. Ed. 442. Until the dominant power given by the Constitution is exercised by appropriate legislation, the power of the states is plenary. But, when the power of the state and federal government comes in conflict, the latter must control and the former yield. Escanaba Company v. Chicago, supra. Congress may or may not, just as it chooses, exercise its power over navigable streams.

The case of International Bridge Co. v. New York, 254 U. S. 126, 41 Sup. Ct. 56, 65 L. Ed. 176, is largely relied upon by appellants. But in that case the United States had not exercised the power of eminent domain. The bridge between Squaw Island in the Niagara river and the mainland of the state of New York was built "in pursuance of" the statutes of the state of New York. State authority, therefore, was the source of the company's power. The court said:

"When Congress has acted we see no reason for not leaving the situation as Congress has seemed to leave it, if on the most critical examination we discover no intent to withdraw state control but on the contrary an assumption that the control is to remain."

[5] Congress in that particular case did not choose to exercise the power of exclusive control but left it to the state. And so the court left the power of control just where Congress left it. But that Congress does not have absolute, exclusive control, when it chooses to ex-

297 F.—6

ercise it, is a very different proposition. If the consent of a state were necessary before a bridge could be built over navigable waters within its borders, the power of regulating commerce among the states and with foreign nations would reside in the states and not in Congress. In the case at bar, Congress has authorized the construction of the bridge notwithstanding the opposition of the state of New Jersey. Its power to do this was plenary and may not be interfered with by that state. Willamette Bridge Co. v. Hatch, 125 U. S. 1, 12, 8 Sup. Ct. 811, 31 L. Ed. 629; Prigg v. Commonwealth of Pennsylvania, 41 U. S. (16 Pet.) 539, 10 L. Ed. 1060; Luxton v. North River Bridge Co., 153 U. S. 525, 14 Sup. Ct. 891, 38 L. Ed. 808; Southern Railway Co. v. Railroad Commission of Indiana, 236 U. S. 439, 35 Sup. Ct. 304, 59 L. Ed. 661; Economy Light Co. v. United States, 256 U. S. 113, 121, 41 Sup. Ct. 409, 65 L. Ed. 847; People v. Hudson River Railroad Corporation, 228 N. Y. 203, 126 N. E. 801; Id., 254 U. S. 631, 41 Sup. Ct. 7, 65 L. Ed. 447.

The cases relied on and cited by complainants do not establish a contrary doctrine. In the case of Louisville & Nashville Railroad Company v. Kentucky, 161 U. S. 677, counsel quotes part of the opinion on page 702 (16 Sup. Ct. 714, 40 L. Ed. 849), to the effect that the power of Congress over interstate commerce did not take from the states the power of legislation with respect to the instruments of such commerce. From this statement it is argued that the consent of New Jersey is necessary before the bridge may be legally constructed. But the court in speaking of the power of Congress described it as the "dominant power of Congress" and, a little further on in the same paragraph from which counsel quoted, says:

"In the division of authority with respect to interstate railways Congress reserves to itself the superior right to control their commerce and forbid interference therewith."

Congress has always reserved to itself the superior and exclusive right to regulate commerce among the several states, and every time that the Supreme Court has squarely met the question, it has in no uncertain language declared that the power of Congress to regulate the construction of bridges over navigable waters of the United States is dominant. When, therefore, Congress acted in the instant case, its power was plenary, supreme, and exclusive.

The decree of the District Court is affirmed.