CITY OF NEWARK, ET AL. *v.* CENTRAL RAILROAD COMPANY OF NEW JERSEY, ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 351. Argued November 21, 24, 1924.—Decided March 2, 1925.

1. New Jersey, by empowering a railroad company to have as many tracks within its specified right of way as it might deem necessary, and to erect suitable bridges to accommodate them, including draw bridges over navigable waters crossed, impliedly consented that, in the maintenance and improvement of the railroad, a draw bridge over Newark Bay, originally constructed with two tracks, might be replaced by a better one accommodating four tracks upon substantially the same location. Ls. N. J. 1860, c. 64. P. 381.

2. Both state and federal governments having consented to this replacement, it is unnecessary to decide whether the acts of Congress and approval of the plans by the Chief of Engineers and Secretary of War would be sufficient without the consent of the

State, or whether the legislation of Congress supersedes the laws of the State, respecting navigable waters wholly within New Jersey. P. 384.

3. The replacement in question was not within Ls. N. J. 1914, § 4, c. 123, as amended; requiring approval by the state Board of Commerce and Navigation of plans for water front development undertaken since the passage of that act. P. 385.

4. Nor, was approval necessary by the Port of New York Authority, a body corporate and politic created by compact between New Jersey and New York with the consent of Congress. P. 386.

5. The fact that the railroad's bridge was not included in the comprehensive plan for the development of the Port of New York (embracing Newark Bay) adopted pursuant to the said compact, does not make it unlawful or deprive the company of power to construct it. *Id.*

297 Fed. 77; 287 *id.*, 196, affirmed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court which dismissed a bill brought by the City of Newark to enjoin the Railroad Company from constructing a bridge over Newark Bay. Jersey City and the State of New Jersey intervened as complainants. The Port of New York Authority, a body politic established by compact for the development of the Port of New York District, including Newark Bay, was made a defendant and answered, leaving its duties in the matter to the decision of the court. The bill was dismissed on motion of the Railroad, upon the ground that it did not state a cause of action. The two cities and the State appealed.

*Mr. George W. Wickersham,* with whom *Messrs. Jerome T. Congleton,* Corporation Counsel of the City of Newark; *Edward L. Katzenbach,* Attorney General of the State of New Jersey; *Thomas J. Brogan,* Corporation Counsel of the City of Jersey City, and *Paxton Blair,* were on the briefs, for appellants.

*Mr. Richard V. Lindabury,* with whom *Mr. Charles E. Miller* was on the brief, for the Central Railroad Company of New Jersey.

*Mr. Julius Henry Cohen,* for the Port of New York Authority.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This suit was brought by the City of Newark to enjoin the construction of a bridge across Newark Bay. Jersey City and the State of New Jersey by leave of court intervened as parties complainant.

Under the authority of c. 64, Laws of New Jersey, 1860, the defendant company constructed and has since maintained and used a double-track wooden railroad bridge, with bascule draws, across Newark Bay. It is below Newark, between Elizabeth and Bayonne, and crosses the channel at an angle of about 66 degrees. Newark Bay is a navigable estuary, and its waters at this place are wholly within the State of New Jersey. The company proposes, and has commenced, to construct upon substantially the same location a substitute bridge of masonry and steel with four tracks and vertical draws. It claims that the acts of Congress of August 8, 1919, c. 42, 41 Stat. 277, and February 15, 1921, c. 47, 41 Stat. 1099, and the Bridge Act of March 23, 1906, c. 1130, 34 Stat. 84, with the approval of its plans by the Chief of Engineers and Secretary of War, confer authority to construct the bridge in question without the consent of the State. But the company also insists that, if the authority of the State is necessary, it was granted by the act of 1860.

Appellants maintain that the source of power to construct a bridge over navigable waters wholly within one State is in the State itself; that the concurrent consent of both state and federal governments is necessary before such a bridge lawfully may be erected; that the authority granted by the act of 1860 does not extend to the new bridge, and that under laws of New Jersey (c. 123, Laws of 1914, and c. 242, Laws of 1915) the approval of the

substitute bridge by the state Board of Commerce and Navigation is necessary.

The complaint alleges that the City of Newark owns real estate above the bridge on the westerly shore of the bay, and has expended large sums for improvements thereon, consisting of warehouses, slips, docks and other facilities of commerce, known collectively as Port Newark Terminal; that neither the present nor the proposed bridge is necessary to the operation of the railroad; that, because of the threatened construction of the proposed bridge, complainant has been unable to secure tenants for the terminal property; and that, if any bridge shall be constructed between Elizabeth and Bayonne, the free and unobstructed access of vessels to the Newark Terminal will be prevented and the value of the terminal destroyed. The complaint shows that the defendant the Port of New York Authority is a body corporate and politic, established by a compact between New Jersey and New York for the creation of the Port of New York District, and for the comprehensive development of that port. Congress gave its consent to the agreement. C. 151, Laws of New Jersey, 1921; c. 154, Laws of New York, 1921; c. 77, 42 Stat. 174. The district extends as far north as Irvington on the Hudson, New York, as far east as Long Beach, Long Island, as far south as Atlantic Highlands, and as far west as Summit, New Jersey, and so includes Newark Bay and the site of the bridge. See opinion of District Court in this case, 287 Fed. 196, 201. Pursuant to the compact, a comprehensive plan for the development of the Port of New York was approved by both States and consented to by Congress. C. 9, Laws of New Jersey, 1922; c. 43, Laws of New York, 1922; c. 277, 42 Stat. 822. Appellants insist that Congress, by creating and adopting as its instrumentality the Port Authority, qualified the license granted by the United States to the company by imposing as an additional requirement the approval of that body.

The petition of intervention of Jersey City adopts the allegations of the complaint and shows that within its territorial limits it has much shore land on Newark Bay and the Hackensack River, which is a continuation of the bay, and that it owns lands on these waterfronts, on which it has expended large sums for the construction of wharves and other improvements. The petition states that the construction of the proposed bridge will cause that city irreparable injury. The petition of intervention of the State of New Jersey calls attention to the provisions of the acts of 1914 and 1915, and alleges that the company has not obtained the approval of its plans for the proposed bridge by the Board of Commerce and Navigation.

The complainant and interveners pray judgment that the defendant company is without right or power to build the proposed bridge; that it would be an unlawful purpresture and public nuisance; and that its construction without the permission of the New Jersey Board of Commerce and Navigation and the Port Authority is unlawful, and for an injunction.

The defendant Port Authority answered. The defendant company moved to dismiss the complaint on the ground that it failed to state a cause of action. The motion was granted by the District Court (287 Fed. 196), and its decree was affirmed by the Circuit Court of Appeals. 297 Fed. 77. Complainant and interveners appealed to this court. Judicial Code, § 241.

By the legislation empowering the company to construct, maintain and use the railroad, the State of New Jersey consented to the construction of the bridge in question.

At the time the bridge was built, there was no applicable legislation by Congress. And it was within the power of the State to authorize its construction. *Willson* v. *Black-Bird Creek Marsh Company,* 2 Pet. 245, 252;

*Escanaba Company* v. *Chicago*, 107 U. S. 678, 683. Chapter 64, Laws of New Jersey, 1860, provides: "That it shall and may be lawful for the Central Railroad Company of New Jersey to extend their railroad from some point in their track in the city of Elizabeth, to some point or points on New York bay, in the county of Hudson, at or south of Jersey City; and for that purpose, in its construction and completion, maintenance, use and enjoyment, all and every provision of the act entitled, 'An act to incorporate the Somerville and Easton Railroad Company' [approved February 26, 1847], and of the several supplements thereto, shall extend and be applicable to the railroad now authorized to be constructed, in every respect as if the same had been originally authorized under the said act to which this is a supplement. [§1] . . . . That the said railroad company shall construct a suitable bridge over any navigable water that they may cross, with a pivot draw with two openings, each of seventy-five feet in width, at right angles to the main channel, located at a point convenient for navigation . . ." (§2.) Section 6 of the act of incorporation of 1847 confers upon the president and directors of the company " all the rights and powers necessary and expedient to survey, lay out, and construct " the railroad " not exceeding one hundred feet in width, with as many sets of tracks and rails as they may deem necessary . . . and to erect embankments, bridges, ferries, and all other works necessary to lay rails and to do all other things which shall be suitable or necessary for the completion or repair of the said road or roads." These laws conferred on the company not only the powers expressly defined, but also those which fairly are incidental thereto. *Union Pacific Ry. Co.* v. *Chicago, &c. Ry. Co.*, 163 U. S. 564, 581. Necessary bridges are essential parts of the railroad; they are stretches of railroad over water. As to bridges over navigable waters, the act of 1860 specified draws and the num-

ber and width of openings. But it did not prescribe the number of tracks or other elements which were to constitute the railroad. The company was empowered to have as many tracks, within the width specified, as it deemed necessary. That the company in the first instance might have built a four-track bridge of permanent materials such as is now proposed, instead of the smaller wooden structure, cannot be doubted. The powers granted were not exhausted by the construction of the tracks and bridge first provided. Its charter was of unlimited duration. Bridges, as well as other elements of the property, must be replaced when they wear out or become inadequate. The company was empowered to maintain and improve its railroad, as it might from time to time find necessary or expedient. It was not bound to have its performance limited to the capacity of the bridge first constructed, but it was free to add to its transportation facilities by laying down additional tracks over waters crossed by its bridges as well as upon land. Plainly, authority to provide, as needed, better and stronger bridges having additional tracks is to be regarded as within the purposes of and incidental to the powers expressly given. See *Railway Companies* v. *Keokuk Bridge Co.,* 131 U. S. 371, 385, 389; *Brainard* v. *Clapp,* 10 Cush. (Mass.) 6, 10; *Western Union Telegraph Co.* v. *Polhemus,* 178 Fed. 904, 906. This case is not like *Morris and Essex Railroad Co.* v. *Central Railroad Co.,* 31 N. J. L. 205, or *McCran* v. *Erie Railroad Company,* 95 N. J. Eq. 653. In the former, the company, having laid out its railroad in accordance with the charter, was held to be without power to add a branch or spur. In the latter, it was held that a change of a part of the line shortening a curve could not be made without complying with § 16 of the Railroad Act of New Jersey, requiring the consent of the Riparian Commission (now the Board of Commerce and Navigation) and the payment of compensation to that body for land under water

taken by the company. Here no extension, branch, spur, or change of route is involved.

The replacement was authorized by the United States. The act of August 8, 1919 authorized the company to construct a bridge suitable to the interests of navigation, between Elizabeth and Bayonne, in accordance with the Bridge Act of March 23, 1906. The latter requires the plans and specifications to be approved by the Chief of Engineers and Secretary of War (§ 1), and provides that, whenever Congress shall authorize a bridge over navigable waters of the United States, the authority shall cease unless construction be commenced within one year and completed within three years. § 6. The company failed to commence construction within one year. But the act of February 15, 1921 made the time for commencing and completing the bridge two and five years respectively from the date of its passage. The Chief of Engineers and Secretary of War, December 29, 1922, approved the plans. The supremacy of the power of Congress to regulate commerce with foreign nations and among the States and of the regulations made by the exertion of that power is so well known as not to require citation of authority. Undoubtedly, that power extends to the navigable waters of Newark Bay and to the plans for the replacement of the bridge in question. As both state and federal governments have authorized or consented to the construction of the bridge, we need not decide whether the acts of Congress and approval of the plans by the Chief of Engineers and Secretary of War would be sufficient without the consent of the State, or whether, in respect of the navigable waters of Newark Bay wholly within the State of New Jersey, the legislation of Congress supersedes the laws of the State.

The laws of New Jersey do not require approval of the plans for the proposed bridge by the state Board of Commerce and Navigation.

Section 4, c. 123, Laws of 1914, provides: "All plans for the development of any water front upon any navigable water or stream of this State, or bounding thereon . . . in the nature of individual improvement or development, or as a part of a general plan which involves the construction, change, alteration or modification of a dock, wharf, pier, bulkhead, bridge, pipe line, cable, or any other similar or dissimilar water front development, to be undertaken subsequent to the passage of this act, shall first be submitted to the said commission [the Board of Commerce and Navigation. §§ 5, 13, c. 242, Laws of 1915], and no such development . . . shall be commenced or executed without the approval of this commission first had and received . . ." And it declares that any such development or improvement commenced or executed without such approval shall be deemed to be a purpresture and a public nuisance. The company in February, 1917, June, 1918, and February, 1922, applied to that board for the approval of its plans for the proposed bridge. All its applications were denied. Nevertheless, the company is free to insist that such approval was not required. See *Buck* v. *Kuykendall*, 267 U. S. 307. The plans for the new bridge to replace the old one are not shown by any allegations of fact to constitute a "plan for the development of any water front." The construction or replacement of a railroad bridge across a bay or river is not necessarily a "water front development." The company was empowered under the act of 1860 not only to construct and maintain its railroad and the existing double-track bridge across the bay, but also to replace that bridge by another having additional tracks, whenever the company found it expedient so to do. We find nothing in the act to indicate an intention to require the plans for such replacement to be submitted to the state board. It is plain that the construction to be undertaken by the company for the maintenance and betterment of its rail-

road bridge over the bay is not a "water front development to be undertaken subsequent to the passage" of c. 123, Laws of 1914.

Approval by the Port Authority of the company's plans for the proposed bridge was not required. There is no provision in any of the laws relating to the Port Authority, or to the comprehensive plan for the development of the port, which requires such approval. And the Port Authority does not claim that the company was required to obtain its permission. In its answer, it prays the court "to determine its legal duties in the premises," and expresses willingness to pass on the application for a permit if the court shall determine one is required. The complaint alleges that the bridge is not included in the comprehensive plan, and that the existing and proposed bridges "are in conflict therewith, obstructive thereof, and inimical thereto." But the fact that the bridge is not included does not make it unlawful, or leave the company without authority to construct it. It does not appear that the Port Authority has attempted, or has power, to deprive the company of its right to maintain, improve and use that part of its railroad. The assertion that the bridge is in conflict with the comprehensive plan is not supported by any facts alleged in the complaint or in the answer of the Port Authority. The pleader's naked assertion is not enough to support the contention that the consent of the Port Authority was required.

*Decree affirmed.*