BURLINGTON COUNTY BRIDGE COM-
MISSION, a body politic of the State
of New Jersey, Plaintiff,

v.

Robert B. MEYNER, Governor of the
State of New Jersey, and Grover C.
Richman, Jr., Attorney General of the
State of New Jersey, Defendants.

No. C 196–53.

United States District Court
D. New Jersey.

June 29, 1955.

Robert L. Hood, Newark, N. J.,
Thomas D. Begley, Burlington, N. J., for
plaintiff's motion.

Grover C. Richman, Jr., Atty. Gen., of
New Jersey, by David D. Furman, Dep-
uty Atty. Gen., of New Jersey, for de-
fendants' motion.

FORMAN, Chief Judge.

The plaintiff in this case is the Bur-
lington County Bridge Commission
which holds title to two bridges across
the Delaware River, namely the Burling-
ton-Bristol Bridge and the Tacony-Pal-
myra Bridge. The defendants were Al-
fred E. Driscoll and Theodore D. Par-
sons, formerly respectively Governor and
Attorney General of the State of New
Jersey. Their successors, Governor Rob-
ert B. Meyner and Attorney General
Grover C. Richman, Jr., have been sub-
stituted as defendants.[1]

The plaintiff seeks a declaratory judg-
ment that Congress has the sole and ex-
clusive jurisdiction in fixing tolls on the
bridges and that Congress has exercised

1. By order of March 4, 1954 filed herein.

that power and has passed legislation which authorizes the plaintiff to charge tolls which include a profit factor.

The contentions of the plaintiff are briefly, as follows:

(a) That the enabling statutes provided the means whereby a state or subdivision thereof could acquire the bridges, and also provided that in the event of such acquisition the toll should include "an adequate return" on the cost.

(b) That the New Jersey Supreme Court, in failing to interpret these statutes, and in restricting the amounts to be charged by plaintiff as tolls on the bridges, has indulged in interstate rate-making, which is beyond its jurisdiction, that power being exclusively in the Congress.

(c) That plaintiff therefore has the right to fix tolls so as to provide for a profit on the cost of the bridges.

Defendants respond, in essence, with the following:

(a) That the New Jersey Supreme Court had jurisdiction to grant the equitable relief which it awarded in the case of Driscoll v. Burlington-Bristol Bridge Co., 1953, 8 N.J. 433, 86 A.2d 201.

(b) That the federal statutes referred to do not grant the plaintiff any power to make a profit through tolls charged on the bridges.

The parties to the suit agree that there are no disputed questions of fact and each side has moved for judgment on the pleadings as authorized in Rule 12(c) of Federal Rules of Civil Procedure, 28 U.S.C.

In the case of Driscoll v. Burlington-Bristol Bridge Co., supra, the New Jersey Supreme Court modified the decision of the New Jersey Superior Court, 10 N.J.Super. 545, 77 A.2d 255, and directed, among other things, that the plaintiff herein should retain title to the Burlington-Bristol Bridge and the Tacony-Palmyra Bridge and operate them under surveillance of the Superior Court of New Jersey. It was also adjudged that the tolls charged on these bridges should not exceed an amount necessary to retire the bonds which underwrote the acquisition of the bridges, and after their liquidation to provide only for repair, maintenance and operation of the bridges. Certiorari to the United States Supreme Court was denied in 1952, 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 and a petition for a rehearing was also denied in 1952, 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687.

In authorizing the construction of each of the bridges in question Congress also provided for their eventual acquisition by either of the adjoining states or their political subdivisions in virtually identical terms. In establishing the rates of tolls to be fixed the following language was used:

"Sec. 5. If such bridge shall be taken over and acquired by the States or political subdivisions thereof under the provisions of section 4 of this Act, the same may thereafter be operated as a toll bridge; in fixing the rates of toll to be charged for the use of such bridge, the same shall be so adjusted as to provide as far as possible a sufficient fund to pay for the cost of maintaining, repairing, and operating the bridge and its approaches, to pay an adequate return on the cost thereof, and to provide a sinking fund sufficient to amortize the amount paid therefor within a period of not to exceed thirty years from the date of acquiring the same. After a sinking fund sufficient to pay the cost of acquiring such bridge and its approaches shall have been provided, the bridge shall thereafter be maintained and operated free of tolls or the rates of toll shall be so adjusted as to provide a fund not to exceed the amount necessary for the proper care, repair, maintenance, and operation of the bridge and its approaches. An accurate record of the amount paid for acquiring the bridge and its approaches, the expenditures for operating, repairing,

and maintaining the same, and of the daily tolls collected shall be kept, and shall be available for the information of all persons interested." 44 Stat. 589 (relating to the Burlington-Bristol Bridge) and 44 Stat. 1025 (relating to the Tacony-Palmyra Bridge).

The Supreme Court of New Jersey decided that it was unnecessary to interpret that provision in view of its holding that the plaintiff had no power to charge tolls which included a profit for the enrichment of a county. It said:

"An examination of the various statutes pertaining to bridge commissions fails to disclose any provision from which it can reasonably be inferred that they have the power to operate bridges for profit. Rather, from the fact that the powers of bridge commissions are spelled out in some detail in the statutes without mention of the right to make a profit and also from the fact that the entire statutory scheme is designed towards making the bridges 'self-liquidating,' it clearly was not the legislative intent to give bridge commissions such power. For example, N.J.S.A. 27:19–32 pertaining in part to the rate of tolls, specifically states that: 'The rate of tolls to be charged for the use of any bridge constructed or purchased under the provisions of this article shall be so fixed and adjusted as to comply with any contract or agreement of the commission relative thereto and, in any event provide a fund sufficient to pay the interest and principal of any bonds issued under this title, and to provide an additional fund to pay the cost of maintaining, repairing and operating such bridges.' No mention whatever is made of providing a profit for the enrichment of a county. Moreover, in view of the fact that a bridge commission is empowered by N.J.S.A. 27:19–28 to acquire intercounty and interstate bridges, it would be unjust to infer that one county could profit at the expense of, and out of property located in part in another county or state. It is not necessary for us to interpret the provision in section 5 of the two federal acts authorizing the construction of these bridges to the effect that tolls may be charged 'to pay an adequate return on the cost thereof.' Quite obviously the Federal Government cannot grant a power to an agency of the State which the State itself has not seen fit to grant. Even an interpretation of the federal acts most favorable to the defendant county would only permit the State to authorize the making of a profit from the operation of the bridges. * * *" 8 N.J. 433, 490–491, 86 A.2d 201, 229.

There is therefore a clear adjudication by the Supreme Court of New Jersey to the effect that the plaintiff, by virtue of its creation under state legislation, has no power to charge tolls which include a factor of profit. It is that adjudication which defendants set up as an estoppel and which plaintiff attacks as beyond the scope of the authority of the State court.

Plaintiff advances several cases for the proposition that Congress may confer upon an instrumentality a power not specifically granted by the State of its creation. They are all distinguishable from the instant case.

In each of the cases of Stockton v. Baltimore & N. Y. R. Co., C.C.N.J.1887, 32 F. 9, appeal dismissed, 1891, 140 U.S. 699, 11 S.Ct. 1028, 35 L.Ed. 603; Seaboard Air Line R. Co. v. Daniel, 1948, 333 U.S. 118, 68 S.Ct. 426, 92 L.Ed. 580; Latinette v. City of St. Louis, 7 Cir., 1912, 201 F. 676; and City of Newark v. Central R. Co., D.C.N.J.1923, 287 F. 196, affirmed 3 Cir., 1924, 297 F. 77, affirmed 1925, 267 U.S. 377, 45 S.Ct. 328, 69 L.Ed. 666, there was involved a specific federal act granting a certain power to a *defined existent instrumentality*. In each of those cases it was held that the specific power could be exercised by the instrumentality concerned even though the power had not been granted by the state

in its creation. Such is not the situation here. There is no specific federal action, by legislation or otherwise, granting to *the Burlington County Bridge Commission* the right to charge tolls which would provide for a profit on its cost in acquiring the two bridges. Furthermore, in none of those cases was there a prior adjudication by a state court holding that the instrumentality concerned was without power to exercise the authority granted by federal action.

The case of Covington & Cincinnati Bridge Co. v. Kentucky, 1894, 154 U.S. 204, 14 S.Ct. 1087, 38 L.Ed. 962, involved a bridge company incorporated under the laws of Kentucky which provided that the corporation, in order to become effective, required approval by the State of Ohio, since its purpose was to construct and operate a bridge connecting the two states. The necessary approval of both states was obtained and the bridge was erected. Subsequently the State of Kentucky enacted a provision attempting to limit the rate of toll to be charged on the bridge, and for failing to comply with that enactment the bridge company was prosecuted. In reversing the resulting conviction the United States Supreme Court based its holding on the fact that the bridge was built with the consent of both states, and that any action by one of them with respect to the toll-fixing would nullify the corresponding right of the other. It held therefore that since the bridge accommodated the flow of interstate commerce, Congress alone possessed the power to resolve such differences and to enact a uniform scale of charges which would be operative in both directions. Such a case must be limited to its particular facts and is also distinguishable from the instant case.

In the case at bar the decision of the New Jersey Supreme Court goes no further than to hold that the plaintiff, having been created under specific legislation of New Jersey, has no power other than those explicitly granted in that legislation. The United States Supreme Court has denied certiorari and has denied a petition for a rehearing. No case

has been cited by the plaintiff as authority for its assertion that the adjudication is not binding upon this court under principles of res adjudicata.

The plaintiff, however, claims that the decision of the New Jersey Supreme Court, with regard to restricting the rates of toll, was beyond the jurisdictional power of that forum due to the fact that it related to interstate commerce.

The case of Grubb v. Public Utilities Commission, 1930, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972, stands for the proposition that state and federal courts have concurrent jurisdiction of suits of a civil nature arising under the Constitution and laws of the United States, save in exceptional cases where the jurisdiction has been restricted by Congress to the federal courts. The United States Supreme Court, in denying certiorari, has seen fit not to review the action of the Supreme Court of New Jersey in this instance, and while such denial is not to be taken as an adjudication on the merits, I fail to see how this court can act as an appellate tribunal to determine the propriety of the judgment of the New Jersey Supreme Court.

In any event, if it be assumed that this court is not limited by principles of res adjudicata and full faith and credit, the plaintiff, in order to prevail, must establish that the federal statutes authorize it to charge tolls which include a profit factor.

The intent of Congress in promulgating the enabling statutes, and in particular section 5 of each as above set forth, must be analyzed through a logical interpretation of the words used. It is established in each instance that the toll rate shall provide an amount sufficient to pay the cost of maintenance, repair, and operation, to pay an adequate return on the cost and to provide a sinking fund to amortize the cost of the purchase of the bridge. A specific limitation follows immediately whereby the amortization must be completed within 30 years and the tolls charged after accumulating the

amortization fund must be limited to an amount necessary for care, repair, maintenance, and operation. It is clear that the legislative intent was to limit tolls to the satisfaction of expenses of acquisition and ownership of the bridges in the hands of the governmental bodies, and to protect the public by such restriction. This interpretation becomes obvious upon the realization that the tolls after amortization are limited to the costs of repair, operation and maintenance. No provision is made for "an adequate return on the cost". If Congress intended that a profit could be made by the acquiring governmental body, it would not have limited the time interval during which the profit was to be accrued to the period during which the property was to be amortized. If such a statutory construction was to be accepted, it would result in a situation whereby the acquiring body could utilize the entire 30 years to complete the amortization, even though this might be done in a shorter time, in order to preserve its profit-making power. This could not have been the Congressional contemplation, for it is not in the public interest.

A far more likely interpretation of the words "adequate return on the cost" is that they relate to the satisfaction of the cost of acquisition by governmental bodies. Such acquisition would, in the normal course, be accomplished by some funded indebtedness, which would carry with it an obligation of interest. Congress, therefore provided that the tolls charged on the bridges could provide for amounts sufficient to pay interest as well as the principal amount of the obligation accrued in the acquisition. Therefore, once the amortization is complete, no part of the toll would be required to provide for the "return", or interest.

Even if the plaintiff is correct in its interpretation of "adequate return" those words must be considered in the light of the phrase "as far as possible", which modifies the entire provision for the establishment of the fund. The use of these words indicate a legislative intent to make this provision directory, rather than mandatory. Congress certainly did not decree that it was imperative that tolls include an element of profit. Indeed, this whole section merely amounts to a consent on the part of Congress that a state or its subdivision may acquire the bridges and operate them and charge tolls. The New Jersey Legislature in promulgating N.J.S.A. 27:19-32 has not seen fit to take advantage of all of the authority offered by Congress. It has granted county bridge commissions the power to do everything authorized by Congress *except* receive profits through the charging of tolls, assuming that Congress has granted that power in section 5. Therefore it is not "possible" for the plaintiff to fix tolls so as to make profits.

To summarize, this court knows of no authority whereby it has the power to ignore the ruling of the New Jersey Supreme Court. Furthermore, if on any account an interpretation of the federal statutes is required, the meaning is clear that the plaintiff herein has no right or authority to assess tolls which include a factor of profit.

For the reasons stated herein an order should be submitted by the defendants granting their motion for judgment in their favor on the pleadings and denying the motions of plaintiff for like judgment. If agreement cannot be had by the parties as to the form of the order, reserving objections as to the substance, it should be settled on my next motion day.