R. P. ANDERSON et al., Appellants,

v.

Brigadier General L. E. SEEMAN, Division Engineer, Southwest Division, Corps of Engineers, United States Army, et al., Appellees.

No. 16799.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1958.

Rehearing Denied March 27, 1958.

Ireland Graves, John W. Stayton, Robert J. Hearon, Jr., Austin, Tex., William G. Fox, Joyce Cox, Houston, Tex., J. Chrys Dougherty, Thomas G. Gee, Austin, Tex., for appellants.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Alfred H. O. Boudreau, Jr., Attys., Dept. of Justice, Washington, D. C., John C. Ford, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., David R. Warner, Atty., Dept. of Justice, Washington, D. C., for appellees.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and HANNAY, District Judge.

TUTTLE, Circuit Judge.

This is an appeal from a judgment of the trial court dismissing on motion of the appellees this suit to enjoin the taking of appellants' lands for the building of a dam and reservoir on the Angelina River in Texas.

The complaint was filed by a number of plaintiffs whose land would be inundated by the construction of McGee Bend Reservoir. Their complaint is twofold: first, that the construction of this dam cannot legally proceed unless permission is obtained from the Board of Water Engineers of the State of Texas, which has not been done, and, second, that the lands of the complainants are in the upper limits of the contours which are included in the planned reservoir, that the "top segment" of the dam, and thus of the reservoir, is "to be added for the sole purpose of generating hydroelectric power," which is not a purpose for which Congress can constitutionally legislate, and that the law authorizing the condemnation is as to their lands unconstitutional.

It is not disputed that the Neches River, of which the Angelina is an important tributary, is a navigable river; for the purposes of the motion to dismiss it must be taken as true that the defendants, Division Engineer and District Engineer, United States Corps of Engineers, will, unless enjoined, condemn and take plaintiffs' lands.

Although the government asserts that the judgment of the trial court must be affirmed because (1) this is a suit against the United States which has not waived its immunity, and (2) being a suit against the United States, the Secretary of the Army is an indispensable party, we cannot pass on these questions in limine. This is so because the government's reliance on these grounds is based on its argument that *unless the statute authorizing the actions of the defendants is unconstitutional, or unless the officers' action is in excess of their statutory authority*, then this is a suit against the United States.[1] In order to ascertain whether this is a suit against the United

---

1. In its brief the Government says:
 "Where suit is brought against government officers in their representative capacities, as here, the suit is one clearly against the United States unless the action of which complaint is made is in excess of the officers' statutory authority or unless it is taken under the au-

States, then we must go to the merits of the issue, i. e., is the threatened action either based on an unconstitutional statute or is it beyond the authority of a valid statute? Once we have decided that issue then the other questions become immaterial, for if we find the actions unauthorized, then by the Government's own definition this is not a suit against the Government, and if, to the contrary, we find the actions are neither unconstitutional nor beyond the statute, then the appellants lose on the merits. Since the complaint charged that the statute was unconstitutional and in the alternative that the actions of the defendants exceeded the statutory authority, the district court had jurisdiction of the suit.[2]

The complaint here pleads the Rivers and Harbors Act of 1945, 59 Stat. 10, Sec. 2 of the Act provides in part:

"The following works of improvement of rivers, harbors, and other waterways are hereby adopted and authorized in the interest of national security and the stabilization of employment, and shall be prosecuted as speedily as may be consistent with budgetary requirements, under the direction of the Secretary of War and supervision of the Chief of Engineers, *in accordance with the plans in* the respective reports hereinafter designated and subject *to the conditions set forth therein:*

\*　\*　\*　\*　\*　\*

"Neches and Angelina Rivers, Texas; *Senate document numbered 98,* Seventy-sixth Congress;" (Emphasis here and hereafter in quoted material supplied.)

The plans, in accordance with which the adoption of this project was made by Congress are set out in Senate Document 98, which will be discussed below. In any event, it is clear that in construing the law and its scope both the text of the Act and the statement of purpose in the Senate Document are to be considered.

A further provision of the Rivers and Harbors Act upon which appellants rely is that which declares the policy of Congress to recognize the interests and rights of the state in water utilization and control. Relevant parts of this declaration of policy are:

"In connection with the exercise of jurisdiction over the rivers of the Nation through the construction of works of improvement, for navigation or flood control, as herein authorized, it is hereby declared to be the policy of the Congress to recognize the interests and rights of the States in determining the development of the watersheds within their borders and likewise their interests and rights in water utilization and control, as herein authorized to preserve and protect to the fullest possible extent established and potential uses, for all purposes, of the waters of the Nation's rivers; to facilitate the consideration of projects on a basis of comprehensive and coordinated development; and to limit the authorization and construction of navigation works to those in which a substantial benefit to navigation will be realized therefrom and which can be operated consistently with appropriate and economic

---

thority of a statute which is unconstitutional. Larson v. Domestic & Foreign Commerce Corp., 1939, 337 U.S. 682, at page 690 [69 S.Ct. 1457, 93 L.Ed. 1628]."

2. In State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487, the complaint was against a contractor and government lawyers engaged in condemnation proceedings. The three-judge district

court specifically ruled that this was an appropriate method of trying out the issue of constitutionality of the statute and also its proper construction. D.C., 37 F. Supp. 93, 96. This judgment was affirmed by the Supreme Court without comment on this feature of the case. See also State of Colorado v. Toll, 268 U.S. 228, 230, 45 S.Ct. 505, 69 L.Ed. 927.

use of the waters of such rivers by other users.

"In conformity with this policy—

"(a) Plans, proposals, or reports of the Chief of Engineers, War Department, for any works of improvement for navigation or flood control *not heretofore or herein authorized,* shall be submitted to the Congress only upon compliance with the provisions of this paragraph (a).

\* \* \* \* \* \*

"(b) *The use for navigation,* in connection with the operation and maintenance of such works herein authorized for construction, of waters arising in States lying wholly or partly west of the ninety-eighth meridian *shall be only such use as does not conflict with any beneficial consumptive use, present or future, in States* lying wholly or partly west of the ninety-eighth meridian, *of such waters for domestic, municipal, stock water, irrigation, mining, or industrial purposes."*

Dealing then with the first contention of complainants we restate it to be: Texas has a Board of Water Engineers whose approval is required before any person or agency, including, according to the state statute, the United States, can commence the construction of a dam or reservoir on the rivers of the state; the Rivers and Harbors Act of 1945 shows on its face that the approval of the Neches River and Angelina River projects was made expressly subject to the right of veto by the State of Texas. This argument depends (1) on the general statement of policy in the preamble to the statute quoted above, and (2) on the specific provision in paragraph (b) which is also reproduced in full above. Texas is a state "lying wholly or partly west of the ninety-eighth merid-

ian." Appellants do not take the position, so far as this contention is concerned, that Congress did not have the *power* to authorize the dam and reservoir without the state's consent, but they say that Congress intended not to do so.

■ We think the language of the Rivers and Harbors Act is not susceptible of the construction that before the building of the dam the United States must seek and obtain permission from the Texas Board of Water Engineers.[3]

This act of Congress specifically authorizes the construction of the dam in question without any expressed limitations. On the face of the matter, then, it would seem quite unlikely that the act could be construed as to make possible any requirement that before it was constructed permission of the State of Texas must be obtained. Moreover, the policy statement relied on by appellants as expressing the limitations, shows exactly how it is to be made effective. The statement of policy is followed by this language:

"In conformity with this policy—

"(a) Plants, proposals, or reports of the Chief of Engineers, War Department, for any works of improvement *for navigation or flood control not* heretofore or *herein authorized,* shall be submitted to the Congress only upon compliance with the provisions of this paragraph (a) \* \* \*."

(Then follow detailed provisions for submitting proposals to the states with opportunity to make known the state's views. Nothing is stated that permits the conclusion that even as to future projects a final disagreement with a state shall stand as a veto of the project.)

"(b) The use for *navigation,* [note paragraph (a) refers to

3. It will be noted that the Board itself is not a party to this litigation and is not seeking to establish its power of veto over the action of the United States. An interesting question not discussed by the parties and therefore not passed on by us is whether private parties in this kind of litigation have the standing to assert this point, since the right to be vindicated, if it exists at all, belongs to the State of Texas. For all that appears the State considers that the proposed construction is entirely consistent with the stated federal policy.

works of improvement for *navigation* or *flood control*] *in connection with the operation and maintenance* of such works herein authorized for construction, of waters arising in States lying wholly or partly west of the ninety-eighth meridian shall be only such use as does not conflict with any beneficial consumptive use, present or future, in States lying wholly or partly west of the ninety-eighth meridian, of such waters for domestic, municipal, stock water, irrigation, mining, or industrial purposes."

It is from this statement of policy and the statement of implementation in (b) that appellants spell out an intent by Congress to require the Chief of Engineers to withhold the construction of the dam and reservoir until permission could be obtained from the Texas Board of Water Engineers; and this in spite of the following language of the Act:

"The following works [including the one in question] * * * shall be prosecuted as speedily as may be consistent with budgetary requirements, under the direction of the Secretary of War and supervision of the Chief of Engineers * * *."

(Followed by a restriction delaying all projects until six months following termination of the war).

Bearing in mind, as we must, that the authorization of this dam followed years of study and planning, which finally resulted in a report recommending construction, which report was itself made a part of the statute by reference (Senate Document No. 98) it becomes plain that Congress considered that as to the projects "herein authorized" due recognition had already been given to the policy of cooperation with the states, and no further restraints were to be placed as to these projects except such as were there specifically included in the Act itself. The only one applicable here was paragraph (b) above.

▆▆ The restrictions contained in paragraph (b) obviously are not directed to the *construction* of the works in the western states. In fact it refers to them as "work herein authorized for construction." These restraints related only to "operation and maintenance" of the work *after construction*. That this is so seems so apparent that it hardly seems necessary to add the further comment that it is only the "use for *navigation*" in the managment and control of the dam and reservoir that is stated to be in some respects made subject to local uses. Even this provision may not be taken to mean that determination whether such management and control is in conformity with the stated purpose is for the state to decide. It is merely a statutory guide for the operation of the facility by the Government after construction. While it must be recognized that Congress can and occasionally does condition its own acts on cooperation with, or subject to the rights of, state governments, United States v. Gerlach Livestock Co., 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231, we find nothing in the Rivers and Harbors Act of 1945 thus limiting the authorization for construction of this dam and reservoir.

The other contention of appellants is that, conceding that Congress has the constitutional power to build dams and reservoirs in the interest of navigation and flood control, this does not include the power "to add a segment for the generation of hydroelectric power where Congress could not possibly conclude on the facts that the added segment would help pay for the project or would benefit navigation or flood control."

▆ Appellants contend that they have pleaded facts to support their claim that Congress could not possibly conclude that the top segment of this dam would help pay for the project or would benefit navigation or flood control. In view of the fact that Senate Document 98 is pleaded in the complaint and since it is before us for consideration, we view these allegations of "fact" in light of that document. With the report on which Congress acted before us as a part of plaintiff's own pleading, we are constrained to say that this allegation

that Congress could not find that the top segment of the dam would benefit navigation or flood control is a mere conclusion. This is so because there is pleaded by the plaintiffs themselves the Senate Document which contains much material [4] to support its conclusion that:

"a plan of improvement for the lower Neches River that provides for a dam and reservoir on the Neches River near Rockland, Tex., a dam and reservoir on the Angelina River near McGee Bend, and two dams on the Neches River below Rockland would:

"(a) Benefit existing navigation on the Neches River by alleviating conditions that cause delays to shipping and accidents to vessels.

"(b) Reduce the cost of maintenance of the improved channel in the Neches River.

"(c) Make possible the navigation of the Neches River by light-draft craft for about 90 miles above Beaumont.

"(d) Provide considerable flood protection to the valley below the proposed dams.

"(e) Assure an adequate and dependable supply of water in the river for municipal and industrial purposes, and for the irrigation of a large acreage of rice land.

"(f) Make possible the development of a large amount of hydro-electric power.

"(g) Afford considerable benefits for wildlife conservation and recrea-

[4] e. g. Paragraphs 84, 85, 86 of the report which shows the interrelated purposes and the interrelated benefits to be obtained from all of the facilities taken in conjunction with each other: "84. General.—The water problems in the lower Neches River Valley are due to both floods and low flows. Floods constitute a considerable hazard to navigation because of the resulting excessive currents in the ship channel which cause collisions and groundings. Floods also are detrimental to navigation in that they cause shoaling in the turning basin and channel. They cause substantial direct damages in the flood plain of the lower river and in the city of Beaumont. Low flows result in shortages of fresh water for municipal, agricultural, and industrial uses. For long periods during dry seasons, the flows are insufficient to adequately dilute the waste from the oil fields in the upper watershed and the sewage emptied into the river at Beaumont. "85. It is apparent that the alleviation of these conditions depends upon the storing of a portion of the flood flows for release during periods of low natural flow. Large storage reservoirs are essential to such a plan. The two sites, at Rockland on the Neches River and McGee Bend on the Angelina River, are the only ones favorable for dams that would provide sufficient reservoir capacities. Studies of these two sites indicate that sufficient storage could be obtained at either one of the sites to provide regulation in stream flow necessary to meet the present demands for water. However, control of either the Upper Neches River or Angelina River, alone, would afford only partial navigation and flood-control benefits as either stream is capable of producing floods on the lower river. Further, the regulation of only one stream would make the inclusion of power production in the plan uneconomical, as the operation of the reservoir to meet the seasonable demands for water would reduce materially the prime energy output. With dams on both streams, the operation to provide the maximum amount of prime energy would release at all times the water required to meet the demands downstream. The proposed plan of improvement, which includes dams at both sides, would effect a large measure of flood control and would provide an adequate flow in the lower river during periods of low natural flow, and thus would practically solve the water problems in the lower watershed. In addition, the proposed plan would permit the development of a large amount of firm power. "86. The proposed plan is designed to coordinate in the best manner the several purposes of the dams and to achieve the maximum benefits therefrom. In addition to the large dams proposed, it is desirable to include two small dams downstream for the regulation of the fluctuating discharges from the generating plants, and it was found that these dams could be justified for power production alone."

tional purposes, pollution abatement, and other benefits incidental to those stated above.

"179. The district engineer concludes that the benefits to be derived from the proposed improvements would greatly exceed the costs."

■ This pleading completely refutes the allegation that Congress could *not* have found that this particular dam would benefit navigation or flood control. We do not, we cannot, go behind Congress' determination to build this dam as a part of a coordinated plan of improvement of a river valley to determine how many feet of the dam are necessary for navigation, how many for flood control and how many for power, in order to isolate the top twenty five feet as being for an unconstitutional purpose. This has been authoritatively settled in State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487. We have considered appellants' argument that the Oklahoma case is distinguishable on the basis that there it was said that "power paid the way" for the construction, the argument here being that power demonstrably couldn't "pay the way" or even "pay its own way" if the particular dam is considered separately from the others. The recommendation of the report on which Congress acted is to the effect that the power of the several dams would make a substantial contribution to the annual charges. We cannot "exercise a legislative judgment based on a complexity of engineering data," State of Oklahoma v. Guy F. Atkinson, supra, 313 U.S. at page 527, 61 S.Ct. at page 1060, in order to ascertain just what part the top twenty five feet of the dam contributes to the whole, either by increasing the power generated at its site or in stabilizing the flow to the generating sites down river, which are all part of the same development. See also, in this connection, United States v. Twin City Power Co., 350 U.S. 222, 224, 76 S.Ct. 259, 100 L.Ed. 240. "Whether the particular structures proposed are reasonably necessary, is not for this court to determine." Arizona v. California, 283 U.S. 423, 456, 51 S.Ct. 522, 526, 75 L.Ed. 1154.

■ We hold that the projected dam was authorized by the Rivers and Harbors Act of 1945 without the necessity of obtaining permission for its construction from the Texas State Board of Water Engineers, and that the dam and reservoir, as authorized by Congress, was not beyond the Congressional power to build.

The judgment is affirmed.