

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

November 24, 1970

Rep. John Allen, Chairman
Texas Water Resources Study
  Committee
House of Representatives
P. O. Box 12236, Capitol Station
Austin, Texas 78711

Dear Sir:

Opinion No. M-735

Re: State and Federal
    Relations as to
    Texas streams --
    both as to pro-
    jects and water
    uses.

The Texas Water Resources Study Committee (H.C.R.
12, Acts 61st Legislature, 1st C.S., 1969, page 37),
has requested our opinion in answer to the following
two questions:

"(1)  Can a non-Federal entity construct a
     project which the Congress has author-
     ized a Federal agency to build?

"(2)  What is the Federal-State relationship
     in connection with the release by
     Federal Authorities of water behind
     Federal dams?"

We must first review the general principles of law
relating to Federal-State navigation powers. Article I,
Section 8, Clause 3 of the United States Constitution
(the Commerce Clause), reads in part as follows:

> "The Congress shall have power...to
> regulate commerce...among the several
> states..."

The United States Supreme Court has held that by
virtue of the power delegated to the Congress in the U.S.
Constitution to regulate interstate commerce (Art. I,
Sec. 8, Clause 3), there can be no unqualified vested
rights under State law in the appropriation and use of
water of a "navigable stream" where such water rights
obtained through the state conflict with Federal laws
adopted pursuant to the powers delegated to the Congress.
This overriding Federal supremacy in water matters re-
lating to navigation, or other Federal action pursuant
to the commerce clause of the U.S. Constitution, exists
not only as to those streams presently used for naviga-
tion, but also as to any stream which might be made
navigable, and to a non-navigable tributary which flows

into a navigable stream where diminution of the tributary flow might affect the navigable part thereof. United States v. Appalachian Electric Power Co., 311 U.S. 377 (1940); First Iowa Hydro-Electric Co-op v. Federal Power Commission, 328 U.S. 152 (1946). Federal power as to navigation encompasses plenary control over all navigable streams, and for the protection of these streams, the Federal Government can control the flow of their tributaries. Amory v. Commonwealth, 321 Mass. 240, 72 N.E.2d 549 (1947), 174 A.L.R. 370; St. Anthony Falls Power Co. v. St. Paul Water Commissioners, 168 U.S. 349 (1897); Sanitary District of Chicago v. U.S., 266 U.S. 405 (1925); U.S. v. West Virginia, 295 U.S. 463 (1935); U.S. v. Appalachian Electric Power Co., 311 U.S. 377 (1940). The general recognition of the superiority of the United States over navigation has been recognized in our Texas Attorney General's Opinions M-389 (1969), M-330 (1969), C-370 (1964), and M-87 (1967).

In Waters and Water Rights, Vol. 2 (The Allen Smith Company Publishers), Sec. 101.1(C), the Summary at pages 8-9 reads as follows:

"The scope of congressional power as it emerges from these cases is:

1.  All navigable streams are subject to the navigation power. 'Navigable' means: (a) once having been navigable; (b) navigable in fact; (c) navigable after reasonable improvements.

2.  Nonnavigable streams which affect the navigable capacity of navigable streams are subject to the express exercise of the regulatory power.

    Thus any stream system could be subjected to federal control by making any portion of it navigable. This would bring within the scope of the navigation power the nonnavigable

> stretches and tributaries of the
> system *if affecting mainstream
> capacity.* Theoretically, therefore,
> few waters in the United States are
> immune from the navigation power.
> But we see again that the logical
> and practical limits of federal
> power are not necessarily co-exten-
> sive." (Emphasis added).

And at page 11, par. 101.2, we find:

> "...Congress may in effect use the
> waters of both navigable and nonnavi-
> gable streams for whatever purposes
> and in whatever manner it wishes. In
> so doing, it can completely override
> any state water plan. It can prevent,
> in toto, state law from being applied
> to 'federal' waters; or, on a lesser
> scale, it can prevent state law from
> being applied to federal waters in a
> particular situation where its appli-
> cation conflicts with the federal
> interest. Finally, as a matter of
> comity, it may submit to state regu-
> lation." (Emphasis added).

Unless Congress has manifested an intent to com-
pletely supersede the authority of the state, navigable
waters are subject to the control of both the state and
federal governments. 65 C.J.S., Navigable Waters, Sec.
10, page 89. In the absence of legislation by Congress,
a state statute authorizing erection of a dam across a
navigable river located wholly within a state is not uncon-
stitutional. Pound v. Turck, 95 U.S. 459 (1877); Woodman
v. Kilbourn Mfg. Co., Fed. Cas. No. 17,978 (1867).This same
rule applies to bridges, and a federal court is not at
liberty to assert that paramount federal power for it-
self when Congress has not done this. Pacific Inter-
Club Yacht Association v. Morris, 197 F.Supp. 218 (D.C.
Cal. 1960). This is true because the provisions of the
commerce clause of the U.S. Constitution are not self-
executing.

The United States may perform its functions under the commerce clause without conforming to the police regulations of a State. Arizona v. California, 283 U.S. 423, 451 (1931). It may go up the tributaries of a stream and recover its costs of improving the stream by building, maintaining and operating hydro-electric projects. Oklahoma ex rel. Phillips v. Atkinson Co., 313 U.S. 508 (1941).

In U.S. v. Chandler-Dunbar Water Power Company, 229 U.S. 53 (1913), at page 64, the United States Supreme Court held as follows:

> "So unfettered is this control of Congress over the navigable streams of the country that its judgment as to whether a construction in or over such a river is or is not an obstacle and a hindrance to navigation is conclusive. Such judgment and determination is the exercise of legislative power in respect of a subject wholly within its control." (Emphasis added).

With the above legal principles of Federal preemption in mind, we now return to your two questions, the first of which is:

> "Can a non-Federal entity construct a project which the Congress has authorized a Federal agency to build?"

Our answer is "No", unless some specific Federal law allows State action, because any permission by the State of Texas to a permittee to build a Texas project in a manner different from that authorized by our general national government would be a state law in conflict with a superior Federal law enacted pursuant to a constitutional power delegated to our national government.

In this connection, your attention is also invited to the positive statutory delegation of the Federal approval power to certain federal officers set forth in the National Rivers and Harbors Act, 33 U.S.C.A. 401, which reads as follows:

> "It shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, roadstead, haven, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of the Army: PROVIDED, That such structures may be built under authority of the legislature of a State across rivers and other waterways the navigable portions of which lie wholly within  the limits of a single State, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of the Army before construction is commenced; AND PROVIDED FURTHER, That when plans for any bridge or other structure have been approved by the Chief of Engineers and by the Secretary of the Army, it shall not be lawful to deviate from such plans either before or after completion of the structure unless the modification of said plans has previously been submitted to and received the approval of the Chief of Engineers and of the Secretary of the Army. Mar. 3, 1899, c. 425, § 9, 30 Stat. 1151."

Likewise, there are special statutes such as the Federal Power Act where federal consent is a prerequisite. 16 U.S.C.A. 817. This old  federal law was interpreted by Texas courts to require federal consent by our courts as

early as 1909.  Gulf C. & S.F. Ry. Co. v. Meadows, 120 S.W.521 (Tex.Civ.App. 1909, Error Ref).  This statute was also construed in the case of Minnesota Canal & Power Co. v. Pratt, 101 Minn. 197, 112 N.W. 395, 11 L.R.A. (N.S.) 105 (1907).  Any State of Texas project on a Texas stream must be approved not only by Texas but by the Federal Government under 33 U.S.C.A. 401, as amended by 49 U.S.C.A. 1655g (if bridges are involved), or later Federal action could require removal of such an unapproved project without compensation therefor.  Projects in the Texas Water Plan thus approved pursuant to federal law would prevent the State of Texas from thereafter developing the stream in a manner different therefrom without federal approval. If the project should include any hydro-electric power, the Federal Power Commission must act in the case.  16 U.S.C.A. 817.  Federal law in each case will determine navigability.  Board of Hudson River Regulating Dist. v. Fonda, J. & G.R. Co., 217 N.Y.S. 781 (1926).

State power depends solely on the absence of Congressional legislation asserting the reserved authority of the general government over all navigable streams including even those wholly within a state.  Egan v. Hart, 165 U.S. 188 (1897).  While only the United States government can raise the question that a contract is in violation of Federal law, mere inaction of the Federal government when such a structure is built imposes no obligation on the U.S. not to subsequently exercise its paramount authority.  People v. Board of Supervisors of Whiteside County, 122 Ill. App. 40 (1905); City of Newark v. Central R. Co. of New Jersey, 287 F. 196 (1923), affirmed in 297 F. 77 (1924), and 267 U.S. 377 (1925); 2 A.L.R. 1694.

Rather than receding to a state system of control over waters, use of the Federal Commerce Clause by the federal courts in regard to "navigable waters" is now expanding to include protection of fish and wildlife and to achieve protection of the environment.  Zabel and Russell v. Tabb, 430 F.2d 199 (5th Cir. 1970).

In answer to your first question, then, we hold that a project authorized by the United States Congress preempts a state project on the same river site.  Anderson v. Seeman,

252 F.2d 321 (5th Cir., 1958, cert. den., 358 U.S. 820).
Before building a state water project on a Texas river
site where a federal project has been authorized by the
national Congress, the State of Texas, or its permittee,
must obtain a repeal by Congress of its authorization, and
must then comply with 33 U.S.C.A. 401, as amended by 49
U.S.C.A. 1655g, if any such Congressional act repealing
federal approval of the project does not otherwise waive
such requirements as to the particular project.

Your second question asks:

"What is the Federal-State relationship
in connection with the release by Federal
uthorities of water behind Federal dams?"

In light of the foregoing discussion of authorities
which demonstrate the Federal superiority in navigation
matters where State laws conflict with the superior com-
merce powers of Congress, the United States can build
a project to impound water on a Texas stream and hold the
water so as to recover its costs of improving the stream.
This Federal power extends to entire tributaries and water-
sheds and includes basin control.  Oklahoma v. Atkinson,
313 U.S. 508 (1941), affirming 37 Fed. Supp. 93.  For
example, one case holds that the Federal Power Act super-
sedes state laws which conflict therewith and that the
federal plan of regulation leaves no room for conflicting
state controls.  In this case it was held that the appli-
cant to the Federal Power Commission need not show compli-
ance with state laws relating to water rights.  First Iowa
Hydro-Electric Cooperative v. F.P.C., 328 U.S. 152 (1946).

It should be said in fairness to the Congress that
such general legislation as the 1944 Federal Flood Control
Act (33 U.S.C.A. 701-1) used by such agencies as the
United States Army Corps of Engineers contains a "90-day
clause" whereby the Governor of Texas is given time to
review a proposed flood control project.  The Texas Legis-
lature has enacted Art. 7472e, V.C.S., which requires the
Governor of Texas to forward any engineering report as to
any project "submitted by a Federal agency seeking the
Governor's approval of a Federal project" to the Texas

Water Rights Commission, the successor to the old Board of Water Engineers. Art. 7477, Sec. 9, V.C.S. The State Soil Conservation Board is authorized by Section 6 of Article 7472e, supra, to be the approval agency for the Federal Department of Agriculture. Texas laws also require a reclamation project to be considered by Texas Water Development Board. Art. 8280-9, Sec. 21(1).

Thus, where the Governor of Texas is allowed by a Federal law to express his comments as to his opinion on the feasibility of a federally proposed project, action by the Governor of Texas favorable to the project would present at least an equitable issue that the State had approved retention of waters behind such a federal dam. Where no state approval had been given to a project, the issue in a suit to obtain release of the State-owned waters would be whether the federal officers were exceeding their authority in operating and maintaining the impounding facility. Federal authority to retain water may well depend on the particular law of the federal agency in control of the project. For example, the Reclamation Act has always required conformity to state laws and the water due a state, or its permittee, might be released if the Federal officer has exceeded his authority. Projects by the U.S. Corps of Engineers may well depend on whether the water is being retained in aid of navigation. So long as a reasonable explanation could be given by federal officers or employees in charge of a dam and reservoir to explain and justify their official actions in retaining the water a federal court would not order a release of the water behind a federal dam. Anderson v. Seeman, 252 F.2d 321 (5th Cir. 1958, cert. den. 358 U.S. 820). And even under Texas rules of law as to forcing release of water which it is claimed is being unlawfully retained behind a dam, a full hearing would be required by the courts. L.C.R.A. v. Gulf Coast Water Co., 107 S.W.2d 1101 (Tex.Civ.App., 1937, no writ). Removal of such a case to a Federal District Court would be sought by the Federal Government and would be upheld as a matter of right since federal agencies and federal interests would be involved. 28 U.S.C.A. 1442 and 1446-1450, inclusive. As to those claiming water rights under Texas law who are below a Federal dam, their claims in court would depend on the same inquiry into the particular Federal law involved in the case.

## S U M M A R Y

Federal navigation powers under the Commerce Clause of the U.S. Constitution  (Art. I, Sec. 8, Clause 3) are superior to any State of Texas powers or rights where the waters and streams involved form part of the navigable waters of the U.S., or where alteration of the flow of non-navigable tributaries thereof would affect such navigable waters of the U.S.  Federal authorization of a Texas water project preempts a State project on the same river site unless Federal consent is obtained by law.  The Federal Government can retard, impound and use waters behind Government dams in Texas so long as such use is reasonably related to powers of the U.S. under the Federal Commerce Clause.  Suits over Federal projects in Texas could be removed to a Federal District Court.

Yours truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Roger Tyler
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Rep. John Allen, Chairman, page 10     (M-735)


Houghton Brownlee
John Grace
Bob Flowers
Joseph Sharpley

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant