

# The Attorney General of Texas

June 13, 1984

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gib Lewis
Speaker
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No.  JM-164

Re:   Whether  actions  taken
pursuant to section 12.051 of
the Water Code are subject to
the  Administrative  Procedure
Act, art. 6252-13a, V.T.C.S.

Dear Speaker Lewis:

You ask the following question:

> Are actions taken pursuant to the provision of
> section 12.051 of the Texas Water Code subject to
> the procedural requirements of article 6252-13a,
> V.T.C.S., relating to administrative hearings?

We  conclude  that  the  feasibility  order  issued  pursuant  to  the
provisions of section 12.051 of the Water Code is <u>not</u> subject to the
procedural   requirements   on   article   6252-13a,   V.T.C.S.,   the
Administrative  Procedure  and  Texas  Register  Act  [hereinafter APTRA]
relating to administrative hearings.  A finding as to feasibility made
by the board is not a "contested case" and, therefore, does not fall
within the ambit of APTRA.

You inform us that the Texas Water Development Board on October
14, 1983 approved a flood drainage plan proposed by the U. S. Army
Corps of Engineers for the Lower Rio Grande River Basin.  This action
was taken pursuant to authority conferred by section 12.051 of the
Water Code.  Several persons opposed the board's approval of the plan,
one of whom filed a motion for rehearing with the board on October 28,
1983.  By letter dated November 9, 1983, the board informed the person
filing  the  motion  for  rehearing  that  its  decision  was  final  as
provided in section 12.051(f), Water Code, and that the proceedings
set forth in section 12.051 do not fall within the ambit of article
6252-13a, V.T.C.S., Administrative Procedure and Texas Register Act.

Section 12.051 of the Water Code sets forth the following:

§12.051.  Federal Projects

(a) In this section:

(1) 'Federal project' means an engineering undertaking or work to construct, enlarge, or extend a dam, lake, reservoir, or other water-storage or flood-control work or a drainage, reclamation, or canalization undertaking or any combination of these financed in whole or in part with funds of the United States.

(2) 'Engineering report' means the plans, data, profiles, maps, estimates, and drawings prepared in connection with a federal project.

(3) 'Federal agency' means the Corps of Engineers of the United States Army, the Bureau of Reclamation of the Department of Interior, the Soil Conservation Service of the Department of Agriculture, the United States Section of the International Boundary and Water Commission, or any other agency of the United States, the function of which includes the conservation, development, retardation by impounding, control, or study of the water resources of Texas or the United States.

(b) When the governor receives an engineering report submitted by a federal agency seeking the governor's approval of a federal project, he shall immediately forward the report to the department for its study concerning the feasibility of the federal project.

(c) The board shall hold a public hearing to receive the views of persons and groups who might be affected by the proposed federal project. The board shall publish notice of the time, date, place, nature, and purpose of the public hearing once each week for two consecutive weeks before the date stated in the notice in a newspaper having general circulation in the section of the state where the federal project is to be located or the work done.

(d) After hearing all the evidence both for and against approval of the federal project, the board shall enter its order approving or disapproving the feasibility of the federal

project, and the order shall include the board's reasons for approval or disapproval.

(e)   In determining feasibility, the board shall consider, among other relevant factors:

(1)   the effect of the federal project on water users on the stream as certified by the commission;

(2)   the public interest to be served;

(3)   the development of damsites to the optimum potential for water conservation;

(4)   the integration of the federal project with other water conservation activities;

(5)   the protection of the state's interests in its water resources; and

(6)   the engineering practicality of the federal project, including cost of construction, operation, and maintenance.

(f)   The board shall forward to the governor a certified copy of its order.  The board's finding that the federal project is either feasible or not feasible is final, and the governor shall notify the federal agency that the federal project has been either approved or disapproved.

(g)   The provisions of this section do not apply to the state soil conservation board as long as that board is designated by the governor as the authorized state agency having supervisory responsibility to approve or disapprove of projects designed to effectuate watershed protection and flood-prevention programs initiated in cooperation with the United States Department of Agriculture.  (Emphasis added).

Section 12.051 of the  Water Code was previously codified as section 6.073 of the Water Code.  Section 6.073 replaced now-repealed article 7472e, V.T.C.S.  Article 7472e, V.T.C.S., was enacted in 1955.  Each enactment was substantially similar with regard to the matters at issue in the instant request.  Therefore, section 12.051, in its original enactment, was passed prior to the adoption of APTRA.

Article 6252-13a, V.T.C.S., [APTRA] provides in sections 13 and 19 for agency action and for judicial review, respectively of a "final decision" or "order adverse to a party" in a "contested case." Section 16 sets forth what constitutes a final decision or order, the procedure for filing a motion for rehearing, and that such a motion is a prerequisite to appeal.  APTRA at section 3(2) declares that

> '[c]ontested case' means a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are to be determined by an agency after an opportunity for adjudicative hearing.  (Emphasis added).

Neither section applies if the proceeding does not constitute a "contested case" as defined in section 3(2).  A "final administrative order" is one that leaves nothing open for future disposition; if a right is made contingent upon the occurrence of some future event, the order is not final.  Railroad Commission v. Brazos River Gas Company, 594 S.W.2d 216, 218 (Tex. Civ. App. - Austin 1980, writ ref'd n.r.e.); Railroad Commission v. Air Products and Chemicals, Inc., 594 S.W.2d 219 (Tex. Civ. App. - Austin 1980, writ ref'd n.r.e.).

In Big D. Bamboo, Inc. v. State, 567 S.W.2d 915 (Tex. Civ. App. - Beaumont 1978, no writ), the court held that a "contested case" within the meaning of APTRA:

> must be one in which the legal rights, duties, or privileges are to be determined by an agency after an opportunity for adjudicative hearing.  The word 'adjudicate' is defined in Black's Law Dictionary 63 (4th rev. ed. 1968) as '[t]o settle in the exercise of judicial authority.  To determine finally.  Synonymous with adjudge in its strictest sense.  United States v. Irwin, 127 U.S. 125 . . . and Street v. Benner, 20 Fla. 700.'  Accordingly, it appears to us that the hearing required by [APTRA] must be one in which the agency conducting such hearing will, by a final and determinative order, decide the legal rights, duties, or privileges of the appellants, and in the absence of an appeal therefrom will be a final and binding decree with respect to any such legal rights, duties, or privileges.

Id. at 918.  This language indicates that the administrative proceeding at issue here is not an "adjudicative hearing."  This hearing did not as a final matter determine the "rights, privileges

and duties" of any person. That determination is within the sole authority of the federal government.

Moody v. Texas Water Commission, 373 S.W.2d 793 (Tex. Civ. App. - Austin 1963, writ ref'd n.r.e.), supports our conclusion that this administrative hearing is not a "contested case" within the meaning of APTRA. Moody involved a challenge to a Texas Water Commission feasibility order issued pursuant to article 7472e, V.T.C.S., the now-repealed predecessor to section 12.051 of the Water Code, regarding a federal water impoundment project. In rejecting a claim that such order amounted to a denial of due process in violation of both the Texas and federal Constitutions, the court declared:

> [t]he order of the Texas Water Commission is in the nature of a recommendation concerning a project proposed for construction by an agency of the Federal Government and is not conclusive and does not commit the Federal Government to construct the project. (Emphasis added).

Id. at 797. The Moody court, citing Sun Oil Company v. Railroad Commission, 311 S.W.2d 235 (Tex. 1958), noted that courts generally can review only final actions of an agency having exclusive jurisdiction of the matter concerned. The board under this statute takes no "final action" determining the legal rights, duties, or privileges of any party, but only makes a recommendation. The project here contemplated is one to be constructed, in whole or in part, by federal funds and falls within the legitimate commerce power of the federal government. United States v. Grand River Dam Authority, 363 U.S. 229 (1960). No approval by the state of Texas is required for the construction of such projects. See Neches River Conservation District v. Seeman, 252 F.2d 327 (5th Cir. 1958), cert. denied, 358 U.S. 820 (1958); Anderson v. Seeman, 252 F.2d 321 (5th Cir. 1958), cert. denied 358 U.S. 820 (1958).

The court in Moody, supra, set forth the purpose to be achieved by article 7472e, V.T.C.S., and characterized the act in the following way:

> The opportunity of the State to comment officially upon the proposed project is derived from a provision of the Flood Control Act of 1944 as amended, 33 U.S.C. §701-1(a). This Act is long and we do not copy such herein, but provision is made for plans, submission to Congress and that relations of the Chief of Engineers shall be with the Governor or an agency designated and for the written views and recommendations and for transmittal of such plan to Congress, etc.

> Anderson v. Seeman, 252 F.2d 321 (Fifth Cir. 1958), cert. denied, 358 U.S. 820, 79 S.Ct. 32, 3 L.Ed.2d 61.
>
> Prior to the enactment of Article 7472e there was no statutory procedure whereby the views of the State could be given to Congress on a project like the one involved herein and Sec. 8, the emergency clause in enactment of Article 7472e, recites the purpose of the Legislature.
>
> The several sections of Article 7472e set out in detail the procedures to be followed by the Governor and the Water Commission.
>
> The Act requires the Governor to submit reports of Federal Agencies received by him to the Texas Water Commission for a public hearing, for study and recommendations to him as to the feasibility of the project, and after such hearing that the Commission shall enter its order either approving or disapproving the feasibility of the project, giving its reasons therefor. Upon receipt of such orders the Governor is required to notify the Federal Agency.
>
> The Act sets out in detail in the several sections the procedures to be followed in hearing, determining and order to be entered . . . . (Emphasis added).

Id. at 796-797. Declaring that the nature and action of the commission in similar matters has been held to be administrative, the court stated that no provision for judicial review was prescribed in the statute as might have been and "the fact that the legislature has denied judicial review does not invalidate the Act." Id. at 797. City of Amarillo v. Hancock, 239 S.W.2d 788 (Tex. 1951); Sanchez v. El Paso Civil Service Commission, 475 S.W.2d 323 (Tex. Civ. App. - El Paso 1971, writ ref'd n.r.e.). Admittedly at issue in Moody was whether judicial review was required by due process prior to the adoption of APTRA. But Moody is compelling as to its characterization of the action taken by the board when it issues feasibility orders pursuant to section 12.051 of the Water Code. The public hearing provided by section 12.051(c) is more analogous to a legislative committee hearing than it is to a party adjudicative hearing.

Accordingly, we conclude that the board's feasibility order issued pursuant to section 12.051 of the Water Code does not involve a "contested case" nor does it constitute a "final decision or order."

Hence, the feasibility order issued pursuant to section 12.051 is not subject to the procedural requirements of article 6252-13a, V.T.C.S., ("Administrative Procedure and Texas Register Act").

<u>S U M M A R Y</u>

A feasibility order issued by the Texas Water Development Board pursuant to authority conferred by section 12.051 of the Water Code is not subject to the procedural requirements of article 6252-13a, V.T.C.S., ("Administrative Procedure and Texas Register Act").

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Jim Moellinger
Nancy Sutton